Swingle v. Mill Creek Coal Company, Appellant.

Argued December 12, 1934.

Be-

fore TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*M. M. Burke,* and with him *George Ellis,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY JAMES, J., February 1, 1935:

Antonette Swingle, widow of Charles Swingle deceased, filed a claim for compensation for his death which was allowed by the referee, approved by the compensation board and affirmed by the court of common pleas. From the judgment of the court of common pleas, this appeal was taken.

The question involved, is whether there is sufficient legal evidence to warrant a finding that the death of claimant's decedent, Charles Swingle, was due to anthracosis; and that the injuries sustained by him were a contributing factor.

Charles Swingle, claimant's husband, was a miner employed at the Morea Colliery. He was injured in the course of his employment on November 19, 1931, sustaining a fracture of the ninth rib on the left side about two inches from the vertebral end together with a suggestion of the fracture of the tenth rib in the same location. Compensation was awarded for total disability to March 8, 1932 and decedent returned to

his work on March 16, 1932 and worked until June 10, 1932. During this latter period his working time compared favorable with the working time of the colliery where he was employed; but according to the testimony of a fellow workman, "he could work but no wind at all" and according to the testimony of his wife "he was always sick." He became seriously ill on July 15, 1932, and died from exhaustion on July 18, 1932. The referee found that the injury decedent suffered in defendant's employ on November 19, 1931, was a marked contributory factor in his death.

At the time of his death the decedent was forty-three years of age and in good health prior to the accident. A short time before he was injured, he was examined by the physician who attended him at the time of his injury and this physician found him all right and passed him for a life insurance policy. Doctor O. H. Mengel, the physician who treated decedent in his last illness, called on behalf of the claimant, found that decedent was suffering from miners' asthma or anthracosis and testified in his examination in chief as follows: ...... "Q. Whether or not that fracture of the ribs played a marked contributory factor in that man's death? A. I felt that way when I filled out the death certificate. Q. Feel that way today? A. Yes." and on cross examination: "Q. Doctor, by what process of reasoning do you arrive at the conclusion that this fracture played an important part in the progress of anthracosis? A. The only process—first of all I was given a history of the accident, and because it was an accident to the chest and this condition causing his death was a chest condition it was no doubt about it that any trauma upon the chest would have a tendency to devitalize and reduce resisting power of the organs in the chest and consequently would contribute toward it. Beside that, the period apparently, the period of time that this man suffered from anthracosis was so

short." and on further cross examination: "Q. And you think there was a relationship? A. I took into consideration the fact of the shortness of the period and the history as given to me that the man was in good condition up to the time of the injury and in poor condition from that time on. I must be led to that conclusion." Doctor Berk, who had examined the decedent for the insurance policy and treated the decedent for his injury, did not detect anthracosis at the time of his examination for insurance or when he treated him for the injury and expressed his opinion that there was no positive connection between the injury and the death.

In passing upon this conflicting testimony we adopt the language of the court below, as follows: "The evidence is uncontradicted that death resulted from anthracosis. This, of course, is an occupational disease and if death resulted from it alone, no compensation could be recovered, but if an employee suffering from anthracosis is injured and the injury hastens his death, the case is compensable. It is also compensable if the injury brings on the condition and contributes to the fatal result. Dr. Mengel's testimony amounts to the expression of his professional opinion that the injury was a marked contributory factor in causing death. In other words, it was, according to him, the 'exciting cause' referred to by Dr. Berk. This evidence is competent and sustains the referee's basic finding of fact: Dopkin v. Philadelphia & Reading C. & I. Company, 296 Pa. 71; see also Honis v. Coxe Bros. & Company, Inc., 95 Pa. Superior Ct. 209, 211."

Defendant's complaint that the answer of Doctor Mengel was not such an opinion as warranted the referee and the board in its conclusion, is fully answered by the following language in the opinion of the court below: "All that is required is the expression of the expert's professional opinion and it need not be

expressed in any particular words. 'I think' is equivalent to saying 'I believe': Jones v. P. & R. C. & I. Co., 285 Pa. 317, 319. 'I feel that way about it' is also equivalent to saying 'I believe.' " Consequently, the answer is sufficiently definite, especially when taken in connection with his explanation on cross-examination.

It is not our province to pass upon the conflicting opinions of the physician called by the claimant and the physician called by the employer; in whom should be placed credence is entirely a function of the referee and the board. Our sole duty is to determine whether the record contains any competent evidence upon which the fact finding body can base their findings. In view of the testimony we are convinced that the referee was warranted in finding that the injury to decedent was a marked contributory factor in causing death of claimant's husband.

Judgment affirmed.