Koch *v.* William Mann Co. et al., Appellants.

Argued October 28, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*Charles E. Kenworthey,* for appellant.

*C. Brewster Rhoads,* of *Montgomery & McCracken,* with him *Vincent Moranz,* for appellee.

OPINION BY JAMES, J., April 15, 1937:

This is a workmen's compensation case in which the widow of Emil Koch is the claimant.

Emil Koch, aged 52 years, was employed as a night watchman by William Mann Company. On March 24, 1933 he reported for duty about 6:15 P. M., from which time we have no knowledge of his movements until 7 A. M. on the following morning, when he was found by the engineer of the plant at the third floor of the employer's building, with a portion of his body inside and a portion outside of the elevator resting against the collapsible gate. The body was in a sitting posture with hands twisted, one leg drawn up under, and arms crossed as though in pain. His body was taken to a hospital where he was pronounced dead. On the same day a post mortem was performed by Dr. Richard D. Burk and the cause of death was given as fatty degeneration of the heart with arteriosclerosis. He also found a laceration on the back of decedent's head in the occipital region.

At the first hearing before the referee, Dr. Richard D. Burk and Dr. William D. Stroud, called by the employer, and Dr. Louis B. LaPlace, called by the claimant, testified as to the cause of death. The referee's third finding of fact was "that Emil Koch, on March 25, 1933, while working for the defendant on March 25, 1933, fell and sustained a laceration to the back of his head, in the occipital region; that this fall and resultant injury aggravated a pre-existing heart and cardiovascular condition and hastened the decedent's death, the ultimate cause of death being fatty degeneration of the heart with arteriosclerosis." From this award an appeal was taken to the Workmen's Compensation

Board, which set aside the award and remanded the record for further hearing. Upon the rehearing Dr. LaPlace was recalled by claimant, but no further testimony was offered by the employer. The referee awarded compensation to the claimant and found again as a fact that decedent fell and sustained an injury which aggravated a preexisting heart condition and hastened decedent's death. On appeal this award was sustained by the board and later affirmed by the court of common pleas. From the judgment entered on the award, the employer and insurance carrier have appealed.

Appellant has not raised any question as to the finding of fact that the fall preceded the heart attack, and has confined its argument to the question of the alleged conflict between the opinion expressed by Dr. LaPlace at the first hearing and that expressed by him at the second hearing, contending that by reason of such conflict claimant has failed to meet the burden required in establishing a causal relation between the accident and decedent's death.

There is no dispute that decedent was suffering from a serious heart disease, from which he ultimately died, and were it not for the scalp wound on the back of decedent's head in the occipital region, the record would be barren of sufficient testimony upon which to base a finding of an accidental death; and, therefore, the pivotal fact in dispute was whether the fall preceded the heart attack or whether the heart condition caused the fall. This fact the referee found in claimant's favor.

In basing their opinions as to the cause of death, Dr. Burk and Dr. Stroud assumed that the facts indicated death had occurred from heart disease before the laceration was sustained. In response to a question, as to what his opinion would be if the blow had been

sustained prior to the heart attack, the strongest statement which Dr. Burk made was that "it may" be an accelerating cause. Dr. Stroud, whose opinion was that deceased fell from a heart disease and thereafter sustained the laceration, upon cross-examination testified: "Q. And therefore, it would be equally true, and even to a greater extent, that a precedent blow either by fall or other external force would be a contributing factor and incite death in a man suffering from the conditions which the post mortem indicated in this case? A. Perfectly possible. Q. And, if you believe that, Doctor, I say if you believe that and that the laceration was then sustained, there is no doubt but what you would say that the fall was then a very definite contributing factor, in your judgment? A. No, I would not feel so, based on the fact of the advanced changes in this individual's arteries and the fact that usually the heart condition appears to cause this sudden death. Q. Exactly—usually it does; but, Doctor, if the fall was not the result of heart disease but the result of tripping or otherwise and then the blow was caused to the head, you would think that that blow would be an accelerating cause of death from heart disease? A. I would." From this opinion expressed by Dr. Stroud—if the fact was assumed that decedent fell as the result of tripping or otherwise and the blow was caused to the head—his testimony was that the fall was an accelerating cause of the decedent's death. The compensation authorities having found as a fact that the fall preceded the heart attack, Dr. Stroud's testimony was of itself sufficient to base their conclusion that decedent's death was accelerated by the fall.

Nor are we convinced that the testimony given by Dr. LaPlace at the first hearing was conflicting with that given by him at the second hearing. We shall not attempt to set forth at length all of the testimony given

at both hearings, but only such portions thereof as fairly indicate his opinion. At the first hearing, on direct examination, he testified in part as follows: "Q. Doctor, in view of the fact of the laceration appearing on the occipital region of the deceased's head, what effect would you say so far as contributing factor is concerned would that laceration have to the death from heart failure? A. That is a question which I cannot answer, because it depends on whether the laceration preceded or followed the attack"; and on cross-examination: "Q. Then I assume, Doctor, from that it is your opinion that if this laceration was received after the heart attack, assuming that the heart attack caused the man to fall, that the laceration was not a contributing factor in the death? A. I can only answer that as result of my professional opinion to the effect that if the heart attack were sufficiently severe to make him lose consciousness and fall down to the floor straight away without having been able to sit down beforehand, the heart attack was probably severe enough to cause death. On the other hand, it is possible that the heart attack may not have been severe enough to cause death—that is the least probable of the two circumstances." At the second hearing he testified: "Q. From all the surrounding facts that we have in the question which I just propounded to you, and one of them is that the man was found with an abrasion, if the abrasion or the bump that caused it was prior to the death would it be a contributing factor in the death? A. If the abrasion was prior to death it would be a contributing factor. Q. Now, Doctor, if a man is found with his arms over his abdomen, as is testified here—assuming that to be true—would the human instinct, or what is called 'automatic defense,' would that not naturally throw the person forward to protect himself, or would it throw him backwards—wouldn't that all go to show that if he

died of a heart condition he would have slumped forward, and that the blow he sustained on the back of the head would have occurred prior to the death? A. I believe that assumption is probably correct. Pain in the stomach and pain over the chest are common symptoms of sudden heart failure, and are commonly known as angina pectoris. If the man put his hands over the place where he felt pain and died in that position it is probable that his last moments were spent quietly seated, and if that is true then it is probable that the blow on the head preceded death. ...... Q. You stated in answer to a question, that the blow on the head, described in this case as a contusion of the left occipital region, if it had preceded the attack it would be sufficient to cause the attack and if it followed the attack it was sufficient to aggravate the attack. Following that through, in either case it would be a contributing cause would it not, to the death of Emil Koch? A. It is likely to be. Q. That is your opinion? A. My opinion. Q. It is your opinion that it was a contributing cause? A. Yes, in my opinion it was." It is quite apparent that the opinion expressed by Dr. LaPlace was dependent upon when the laceration on the head occurred. His seeming hesitancy to express a definite opinion in the first hearing was due largely to the character of the questions and the determination of the facts. In addition, no question was asked him in the first hearing which embodied the position in which decedent's body and arms were found. From our examination of the testimony, we see no such inconsistency or contradiction as would warrant us in saying that the opinion expressed was a mere guess.

Appellant relies upon the case of *Mudano v. P. R. T. Co.*, 289 Pa. 51, 137 A. 104, a negligence case, as controlling. In that case the opinions expressed by plaintiff's medical experts were held to be so inconsistent and conflicting that the adoption of one or the other would

be nothing more than a guess, and under such circumstances plaintiff failed to sustain the burden of proof required. The question has not been squarely raised in a compensation case, but our court indicated its view in *Jones v. United Iron & Metal Co.*, 99 Pa. Superior Ct. 394, at page 403, where we said: "Nor are we persuaded that a claimant in a compensation case is in a position entirely comparable with that of a plaintiff in an action for negligence. Section 422 of the Act of 1919 [P. L. 642] provides that neither the board nor the referee 'shall be bound by the technical rules of evidence in conducting any hearing or investigation,' but it is added that 'all findings of fact shall be based only upon competent evidence.' In *Johnston v. Payne-Yost Const. Co.*, [292 Pa. 509, 141 A. 481] it was said that 'the rules of evidence are not applied in these cases with the same rigor as in litigation before a jury...... A strict or unduly technical application of the rules of evidence would at times defeat the chief purposes of the act,— which are to give compensation to employees injured by accidents in the course of their employment and to provide an administrative tribunal, less formal than a court, where such claims can be proved in as simple and direct a manner as is consistent with justice to both sides and a proper administration of the compensation law.' "

The compensation authorities having found as a fact that the fall preceded the death, the record contains sufficient medical testimony to warrant the conclusion that death was hastened by the fall.

Judgment affirmed.