Kazeroski *v.* Susquehanna Collieries Company,
Appellant.

Argued March 1, 1937.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*T. G. Wadzinski,* with him *Henry A. Gordon,* for
appellant.

*Roger J. Dever,* for appellee.

OPINION BY JAMES, J., July 15, 1937.

This is a workmen's compensation case. Anthony
Kazeroski, an employee of defendant, was injured on
December 14, 1934 while in the course of his employ-
ment. A compensation agreement, entered into on
December 31, 1934, described the accident and injury
as, "Holding timber while miner bumped it into place,
it squeezed him against rib. Contusion left chest." On
March 14, 1935 defendant filed a petition to terminate
the agreement on the ground that claimant had re-
covered from the effects of his injury to resume work
February 1, 1935. On March 19, 1935 Kazeroski died
in a hospital. His widow filed a petition on behalf of
herself and children, alleging that her husband's death
was the result of an injury sustained in the accident;
both petitions were heard together. The referee made

an award terminating the compensation agreement, and disallowed the claim. Upon appeal, the Workmen's Compensation Board reversed the referee in both decisions, finding as a fact that "the injury suffered on December 14, 1934, aggravated the preexisting condition and contributed to his death," and made an award in favor of claimant. The court of common pleas sustained the board and from the judgment entered on the award, this appeal was taken.

The only question raised before us is whether the medical testimony, presented by claimant, was sufficient for the board to base its finding that the injury sustained by decedent was a contributing cause of death.

Decedent on the day of the accident was apparently in good health and had been regularly employed prior to the accident. On the day of the accident, and for three weeks, he was attended at his home by Dr. Dodson, the company's physician. He was then sent to a hospital where he was treated until his death. Claimant called Dr. Waters and defendant called Drs. Dodson, Heyer, Weimer, Norstedt and Lanyon. Dr. Waters testified that he attended the post mortem performed on decedent and concluded that the cause of death was chronic bilateral tuberculosis and pulmonary hemorrhage. He further testified: "Q. Doctor, did you hear the testimony in this case? A. Yes, I did. Q. This man prior to December 14, 1934, as observed by his workmen was in apparently good health, good worker; he was injured on that day while holding timber while miner bumped it into place, it squeezed him against the rib, contusing left chest. He never worked after that, if that testimony is to be believed, doctor, whether or not in your opinion that accident this man received was a marked contributory factor in his death? A. It might have aggravated the condition he had. Q. Is it your opinion he [it] did aggravate it? A. Yes. Q. And

in that way hastened his death?  A. If all they say is true.  Q. Yes, one man working with him and observing him as a laborer, if all they say is true, whether or not, doctor, that accident aggravated his condition and resulted in his death?  A. I think it could aggravate his condition.  Q. What is your opinion, doctor, whether it did under the facts as given?  A. That it did aggravate."  This doctor also testified that Kazeroski had not been in good health and that he had tuberculosis.

Dr. Dodson testified that he examined decedent after the accident, three weeks later sent him to a hospital, and that from the day of the injury "went down hill until he died." Dr. Heyer stated he examined decedent at the hospital and that decedent lost weight progressively.  Dr. Lanyon, who performed the post mortem, testified that he found advanced anthracosis as well as tuberculosis.  When the referee asked him, "But you are not saying the injury didn't aggravate the condition?" he answered, "I am not saying that at all." Drs. Dodson, Heyer, Weimer and Norstedt expressed the opinion that the injury did not cause or contribute to decedent's death.

Appellant minimizes the value of Dr. Waters' testimony and cites a number of cases to sustain its position that his testimony did not definitely connect the accident with the death and was, therefore, insufficient to sustain the award.  Appellant relies principally on *Rushonosky v. Lehigh Valley Coal Co.*, 293 Pa. 150, 141 A. 851.  In that case, the doctor testifying for the claimant was asked whether the injury suffered was a contributory cause of death, to which he replied it "could be" and it "very probably was."  He concluded his testimony with this significant statement, "I couldn't say it probably did, but ...... in this particular case I rather suspect the injury had been the cause." It is apparent that the witness did not express an opinion that the death came from the cause alleged.

It should be noted also that the board had disallowed compensation. In such a case, even though the doctor had given most positive testimony, if the board disallowed compensation and there was any competent testimony to support the decision, such decision would have to be sustained on appeal.

The case at bar, however, presents an entirely different situation. Since the board granted an award, our inquiry is narrowly confined to the question of whether there was competent evidence on which the award could be based. If there is such evidence, then the award must be affirmed, even though our conclusion on the facts possibly might have been different. Dr. Waters' testimony is in some respects inconsistent in that in reply to certain questions, he said, "It might have aggravated the condition he had," and, "I think it could aggravate his condition;" and also testified: "Q. Is it your opinion he [it] did aggravate it? A. Yes. Q. And in that way hastened his death? A. If all they say is true;" and in conclusion, when asked what his opinion was under the facts as given, replied, "That it did aggravate." It was the province of the fact finding authorities to reconcile any conflict in this testimony: *Black et al. v. Phila. R. T. Co.*, 239 Pa. 463, 86 A. 1066; *Marinho v. Glen Alden Coal Co.*, 115 Pa. Superior Ct. 279, 175 A. 715. This testimony, read as a whole, warranted the board in finding that in the doctor's opinion the injury aggravated a preexisting condition and hastened his death, which was within the rule now in force that "in his professional opinion the result in question came from the cause alleged": *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 206, 133 A. 256; and sufficiently definite for the board to base its finding of fact: *Swingle v. Mill Creek Coal Co.*, 116 Pa. Superior Ct. 97, 176 A. 828; *Bartlinski v. Northumberland Min. Co.*, 117 Pa. Superior Ct. 437, 177 A. 518.

Nor are we persuaded that Dr. Waters' opinion was expressed without a knowledge of decedent's physical condition. He knew that decedent died of chronic tuberculosis and pulmonary hemorrhage, and knew the nature of the accident. No objection was made to the hypothetical question asked of claimant's doctor. If opposing counsel is of opinion that material facts are not included in a hypothetical question, he may incorporate those facts in questions asked on cross-examination, and may also frame questions involving a consideration of such facts. A slight discrepancy, if there was any here, between the facts assumed and the testimony adduced, is not sufficient to assign as error where it does not appear that an objection was made at the time to the form of the question: *Albert v. Phila. R. T. Co.*, 252 Pa. 527, 97 A. 680.

As we said in *Swingle v. Mill Creek Coal Co.*, supra: "It is not our province to pass upon the conflicting opinions of the physician called by the claimant and the physician called by the employer; in whom should be placed credence is entirely a function of the referee and the board. Our sole duty is to determine whether the record contains any competent evidence upon which the fact finding body can base their findings."

Judgment affirmed.