### Yerko, Appellant, *v.* Clearfield Bituminous Coal Corporation.

Argued April 15, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

270

*George Jerko,* for appellant.

*G. W. Musser,* for appellee.

OPINION BY STADTFELD, J., July 2, 1941:

This appeal by Helen Yerko, widow of Andy Yerko, is from the decree of the Court of Common Pleas of Indiana County, affirming the findings of fact, conclusions of law, and disallowance of compensation by the workmen's compensation board, in an opinion by CREPS, P. J.

This matter was before the court below as a result of a claim petition filed by Helen Yerko, widow of Andy Yerko, praying for compensation for herself and her minor children in which she averred that as a result of injuries sustained during the course of his employment, Andy Yerko died. The referee made an award and the board reversed the referee. The only issue raised before the compensation authorities was whether Andy Yerko died as a result of the injuries sustained.

The records in the case show that on July 3, 1935, Andy Yerko, employed as a coal miner by the defendant company, was injured in the course of his employment. A compensation agreement was entered into wherein the accident and resulting injuries were described as follows: "Buddy was pulling mine car with hoist and rope pulled out a prop, letting rock fall, striking him on

head and back. Contusion of chest and back of head, also lumbar region of back. Left side."

Payments of compensation under this agreement were made for total disability from July 11, 1935 to August 1, 1935, when a final receipt was signed. Andy Yerko was given employment by defendant company on its "picking" table and he continued to work in that capacity until April 18, 1936, when he ceased work. On June 12, 1936, Yerko filed a petition to set aside the final receipt, and, after hearing thereon, the referee by order dated October 20, 1936, dismissed the petition. The decedent appealed and under date of September 24, 1937, the board set aside the referee's findings and disallowance and remanded the record for the purpose of taking the testimony of Dr. R. J. Behan, an impartial medical witness. Yerko died February 28, 1937, of tuberculosis while his appeal was pending and before Dr. Behan could make a physical examination. Dr. Behan examined the record and testified and on May 27, 1938, the referee awarded compensation to Andy Yerko on the basis of total disability from April 18, 1936 (the date Yerko ceased working on the "picking" table) to the date of his death. No appeal was taken from this decision and the compensation was paid.

In the meantime, Mrs. Helen Yerko, widow, the present claimant, filed a claim petition on December 27, 1937, to recover compensation for herself and minor children, averring that her husband's death resulted from the original injuries sustained by him on July 3, 1935. Answer filed by the defendant denied that his death was in any way connected with the original injuries. Dr. F. A. Lorenzo and Dr. Albert J. Bruecken testified on behalf of the claimant and Dr. Joseph Shilen and Dr. J. W. McMeans were called on behalf of the defendant.

The referee made an award of compensation to the widow and her minor children. On appeal by defend-

ant, the workmen's compensation board found that the death of Andy Yerko was not the result of or caused by the accident sustained and reversed the referee. On appeal to the court of common pleas, this finding of the board and disallowance of compensation was affirmed. This appeal followed.

The principal question before this court is whether there is substantial competent evidence in the record to support the workmen's compensation board finding that the death of decedent was not the result of or caused by the injuries sustained in the course of his employment with the defendant company.

The recent amendment to the Workmen's Compensation Act, Section 422 of the Act of June 21, 1939, P. L. 520, 554, provides that: "...... all findings of fact shall be based only on *sufficient* competent evidence to *justify same.*"

The credibility of medical witnesses and the weight to be attached to the testimony of each were matters exclusively for the board, and where any conflicts appeared in their theories or opinions, it was for the board to decide which conclusion it would adopt; *Coder v. Pittsburgh Des Moines Steel Co.*, 142 Pa. Superior Ct. 407, 16 A. 2d 662.

The defendant called Dr. Joseph Shilen, a man who has been connected with hospitals specializing in the treatment of tuberculosis for over seventeen years, and who, during this period had examined several thousand cases of tuberculosis. He testified as follows: "Q. In your professional opinion, did you find any direct or indirect connection between the injury of July 3, 1935, and the cause of death in this case? A. From the history and the records I have read, I can't see where there is any connection in the tuberculosis that this man had and the injury that he received, and from the hospital records at the time he was there following the injury. ...... Q. And do you feel that the tuberculosis such

as you found in this case had any relationship whatever with the cause of his death? A. From the history of the trauma and the hospital records and the symptoms, I don't see where there is any connection here in this case. Q. Now, why do you believe that? A. Well, there were no symptoms found in the hospital records that indicate any pulmonary symptoms that could be attributed to any pulmonary condition, such as coughing of blood, hemorrhages. There was no elevation of temperature, fever, or loss of weight, no fractured ribs or puncture of the lungs. There was nothing in the hospital records to show that there was any pulmonary injury. ...... A. Well, he left the hospital in two weeks and went to work in one month. He could not have had active tuberculosis and do that. Tuberculosis does not work that fast. ...... Q. Would that not, Doctor, depend a whole lot upon the individual himself and upon the type and extent of the injury? A. Not to my experience. I never saw any one able to return to work after there was an active tubercular lesion, with injury or no injury, in one month's time. It is usually long drawn out; six months to two years."

The defendant also called Dr. J. W. McMeans who testified that he was the clinical pathologist for the Pittsburgh Hospital and that he had been engaged in the practice of clinical pathology since 1912. He testified: "Q. Now, Doctor, have you read the entire record in this case, together with the autopsy report? A. Yes. Q. Have you seen the specimens taken by Dr. Bruecken and Dr. Lorenzo at this autopsy? A. Yes, I examined sections which had been prepared by Dr. Bruecken and examined the spine through the courtesy of Dr. Bruecken at his laboratories at the St. Francis Hospital ...... Q. In your opinion, do you find any direct or indirect connection between the injury of July 3, 1935, and the cause of death in this case? A. No."

On cross-examination, Dr. McMeans was equally

positive in his opinion that the death of Andy Yerko was in no way connected with the injuries sustained July 3, 1935. He testified: "A. I don't think the accident had anything to do with the tuberculoma of the brain. I further do not think that the accident had anything to do with the final outcome in this case where the man died of acute miliary tuberculosis, for the various reasons that I have already stated both in my direct examination and cross-examination. If you want me to go into those again, I will be glad to do it, if the Referee wants it."

Appellant contends that the above testimony is negative in that Dr. Shilen said "I can't see where there is any connection" and further that "I don't see where there is any connection." Appellant also contends that when Dr. McMeans said that he "did not find any causal connection" that such a statement does not necessarily mean that no such connection was present. We do not think that such testimony should be considered as negative testimony for the reason that this type of testimony falls within the rule as set forth in the case of *Mellon et ux. v. Lehigh Valley R. R.,* 282 Pa. 39, 42, 127 A. 444, in which case two witnesses testified that no signals were given by a train at a railroad crossing. The Supreme Court held that: "These two witnesses were about to cross the track and, according to the evidence, listened for signals, hence, their testimony cannot be treated as negative, nor disregarded because of the number of opposing witnesses."

In the instant case, the answers of the doctors are the expression of professional opinions after reviewing the hospital records, the findings of the autopsy, the records taken at the several hearings together with their knowledge and experience they "can't see where there is any connection", or that "I don't see where there is any connection", or that "I do not find any direct or

indirect connection between the injury of July 3, 1935, and the cause of death in this case."

The appellate courts of this Commonwealth "...... have never ruled that such testimony must be given in any particular words"; *Johnston v. Payne-Yost Construction Co. et al.*, 292 Pa. 509, 515, 141 A. 481; *Swingle v. Mill Creek Coal Co.*, 116 Pa. Superior Ct. 97, 176 A. 828.

Quoting from the opinion of Brother RHODES in *Icenhour v. Freedom Oil Works Co.*, 136 Pa. Superior Ct. 318, at pp. 322, 323, 7 A. 2d 152, "The compensation authorities must use their own judgment in determining the facts, and, unless it can be said that there is no competent evidence to support the findings and conclusions of the referee and board, they cannot be disturbed by the courts. See *Petrovan v. Rockhill Coal & Iron Co.*, 130 Pa. Superior Ct. 58, 196 A. 516; *Williams v. John B. Kelly Co., Inc.*, 128 Pa. Superior Ct. 228, 230, 193 A. 97; *Glenn v. State Workmen's Ins. Fund et al.*, supra. Likewise, the credibility of the witnesses is for the fact-finding bodies, and not for the courts. It was the prerogative of the compensation authorities to give the testimony of claimant and of each of the other witnesses such consideration as it might deserve, and to accept or reject it in whole or in part accordingly *(Zbirowski v. John T. Lewis & Bros. Co.*, 130 Pa. Superior Ct. 222, 196 A. 606); and that it is the exclusive function of the compensation authorities to find facts, whether from direct or circumstantial evidence, and the inferences therefrom, is not to be lost sight of on appeal to the courts *(Dunphy v. Augustinian College of Villanova et al.*, 129 Pa. Superior Ct. 262, 195 A. 782; *Morris v. Yough Coal & Supply Co.*, supra)."

While there was countervailing testimony on behalf of claimant, under the statute and authorities referred

to supra, we cannot say that the board erred in its conclusion.

The remaining question raised in this case is as to whether the referee erred in failing to obtain the testimony of Dr. S. B. Meyers. This doctor, during the lifetime of the decedent and at the instance of the defendant, had made an examination of the decedent. A report of his findings was made to the defendant who never called the doctor to testify. After the death of Andy Yerko, Dr. Meyers at the request of claimant's representative, attended the autopsy and made certain findings. Upon returning to his office, the doctor discovered the dual capacity in which he had acted. As a result he refused to submit a report of his findings to the claimant's representative. In pursuance to a subpoena "directed and signed by the Referee", the doctor appeared at a hearing which was held after both the claimant and defendant experts had testified. Defendant counsel objected to Dr. Meyers testifying to any facts learned by him as a result of an examination made at the defendant's instance. As a result of this examination and his presence and examination at the autopsy for the claimant, Dr. Meyers said: "Yes, I think I could give my opinion as to a relationship between the original injury and ultimate death ......", but stated that his knowledge of the case was: "colored both by my findings of September 3, 1936, and the gross findings of autopsy of October 11, 1938, and, in all honesty, I cannot, in my own mind, visualize this case only as of one date of October 11, 1938, when the autopsy was performed." Claimant's representative then felt himself entitled to only a part of the doctor's findings in the case and the doctor, being unable to testify without including matters learned while employed by the defendant, asked the referee to elicit the doctor's findings and opinion. Instead of doing this the referee suggested that the doctor make further study of sections taken

at autopsy. This, the doctor declined to do. In answer to a question of the claimant's representative the doctor again stated he had an opinion in the case. Here the case was concluded.

It is under the above circumstances that decedent's representatives raised the issue involved in the second assignment of error that: "the lower court erred in refusing to remand the record to the Workmen's Compensation authorities for the purpose of taking the testimony of Dr. S. B. Meyers."

The appellee contends that this case falls squarely within the rule as laid down by the Supreme Court of Pennsylvania in the case of *Pennsylvania Co. for Insurance on Lives and Granting Annuities, Trustee v. Philadelphia*, 262 Pa. 439, 105 A. 630. In that case, plaintiff brought suit against the city of Philadelphia to recover the value of its property taken under the right of eminent domain. The plaintiff had employed two real estate men as expert witnesses but they were not called by plaintiff for the reason that their estimates of damage were below that fixed by plaintiff's other witnesses, and were more nearly in accord with the damages as testified to by defendant's witnesses. The two experts were subpoenaed by the defendant and were called to testify. Plaintiff objected to their testifying on the ground that they were previously employed by the plaintiff in relation to the same matter. The lower court sustained the objection "on the ground that the witnesses still maintained a confidential relation" with the plaintiff.

The Supreme Court sustained the ruling of the lower court, saying, at p. 441: "The process of the courts may always be invoked to require witnesses to appear and testify to any facts within their knowledge; but no private litigant has a right to ask them to go beyond that. The State or the United States may call upon her citizens to testify as experts in matters affecting the

common weal, but that is because of the duty which the citizen owes to his government, and is an exercise of its sovereign power. So, also, where the State or the United States, in her sovereign capacity, charges the citizen with crime, she may, if need be, lend her power in that regard to the accused, for she is vitally interested, as such sovereign, that public justice shall be vindicated within her borders. Perhaps, under like circumstances, she may also lend her power in civil cases. But the private litigant has no more right to compel a citizen to give up the product of his brain, than he has to compel the giving up of material things. In each case it is a matter of bargain, which, as ever, it takes two to make, and to make unconstrained."

The power and authority given under Sections 19 and 20 of the Workmen's Compensation Law, Act of 1919, July 21, P. L. 1077, 77 PS §§131, 132, enabling such authority to require witnesses to testify as to facts within their knowledge, does not permit the compensation authorities to require a witness, against his own objections, to express his expert opinion.

There was no legal right under which Dr. Meyers could be required to express his professional opinion against his own objection; and further, even if there were such a right, that right was lost by the failure of Mr. Stephenson to elicit the opinion of the doctor under the authority given him by the referee.

We believe the case was correctly disposed of in the court below.

The assignments of error are overruled and the judgment affirmed.