Opinion by
 

 Cunningham, J.,
 

 During the week following August 12, 1935, Artem
 
 *162
 
 Shashura, claimant-appellant herein, lost the vision of his left eye through the acute development therein of a gonococcic infection. Contending that the infection was attributable to an “injury by an accident” sustained that day in the course of his employment as a loader in one of the coal mines of the defendant employer, within the meaning of Section 301 of our Workmen’s Compensation Act of June 2, 1915, P. L. 736, 77 PS §§411, 431, claimant filed his claim petition in which he thus described the alleged accident: “While shoveling coal, dust flew into my face and some entered my left eye.” The employer defended upon the ground that the loss of claimant’s eye resulted from the progress of a general gonorrheal infection of the membrane with which he was afflicted and that there was no causal connection between the incident relied upon by claimant and the loss of the member.
 

 Claimant, his son and a mine motorman, testified to the presence in claimant’s eye of particles of coal dust. Assuming, but not deciding, that the entrance of the coal dust into claimant’s eye was a fortuitous and unexpected happening, outside of the usual course of events in his employment, he still had the burden of showing by expert medical testimony, and beyond mere conjecture, that the presence of the coal dust either caused the gonococcic infection, or, at least, so aggravated a preexisting gonorrheal condition as to bring about the almost immediate destruction of his eye.
 

 At the hearings before a referee both sides introduced medical testimony. On behalf of defendant, Dr. W. J. Hawkins, Jr., the company doctor who first examined claimant, testified he found no “foreign body” in the eye nor any “scratch,” “abrasion,” or “visible signs of trauma.” Drs. J. C. Markel and Robert L. Anderson, specialists of long experience, unequivocally testified that an abrasion of the eye is not a prerequisite to a gonococcic infection therein. Dr. Markel also stated that in the event of a person having such germs in his
 
 *163
 
 eye “the irritation which he would notice might feel like an irritation which he would get following a foreign body in the eye” and expressed the opinion that claimant had a gonorrheal infection in his eye from some source other than the coal dust: “Because you wouldn’t get the reaction like that from simply blowing of dust in the eye. It is a typical description of a well advanced case of gonorrheal infection.”
 

 Dr. Anderson testified that while gonococcic infection is “most common” in the urethra, “it occurs in the eye or other mucous membrane of the body.”
 

 The only • expert called by claimant was Dr. F. C. Stahlman, an eye specialist to whom claimant was sent by Dr. Hawkins on the day following the occurrence in the mine, and whose testimony is hereinafter discussed.
 

 The referee to whom the board remanded the record for further hearing and determination upon the first appeal to it made findings of fact relative to the circumstances under which the dust was blown into claimant’s eye. His eighth finding was to the effect that the entrance of the dust “was the precipitating factor” in claimant’s loss of vision in his left eye. Based upon this finding, the referee made an award to claimant, under Section 306(c) of the statute, as amended April 13, 1927, P. L. 186, 77 PS § 513, for the loss of the member.
 

 Upon the employer’s appeal to it, the board set aside the referee’s eighth finding and substituted therefor the f ollowing:
 

 “Eighth: The board finds as a fact that the claimant lost the vision of his left eye as a result of a gonococcic infection, and that there is no competent evidence to connect that infection with the accident referred to in the fourth finding of fact.”
 

 In an opinion by Chairman Ullman the evidence was reviewed and the conclusion of law reached that claimant’s petition for compensation should be dismissed and his claim disallowed. The court below, in an opinion by
 
 *164
 
 Hughes, P. J., dismissed claimant’s exceptions to the action of the board and, in effect, entered judgment for the defendant employer. This appeal by the claimant followed.
 

 The only question of law for our disposition is whether the claimant met the burden of proof resting upon him by the introduction of competent and substantial medical evidence. He relies upon the testimony of Dr. Stahlman. This witness first saw claimant on the. evening of the 13th when he came to him at the instance of Dr. Hawkins, and was told by claimant “he got some dirt in his eye.” Dr. Stahlman testified he found the lids “so swollen” he “couldn’t uncover the eyeball.” After cleansing the eye, he sent claimant to the hospital where, despite constant treatment, ulceration of the cornea caused the eyeball to rupture destroying vision on the fourth or fifth day. A laboratory analysis of the smear from the eye disclosed a gonorrheal infection.
 

 The witness declined to express any opinion as to when or how the germ entered claimant’s eye. An excerpt from his testimony reads: “Q. Well, that gonorrhea infection, or gonorrhea germ, rather, might not have entered his eye until after this irritation took place as a result of the dust, is that not true? A. Oh, I don’t know when it entered. Q. Well, no one could tell? A. I don’t know that he even had [it] at that time, because this (the smear) wasn’t taken for four or five days and it may have entered in those four or five days; I don’t know. Q. No one could tell just when it entered? A. No. When you are in the hospital you are liable to pick up one thing or you are liable to pick up another.”
 

 Upon the question of any possible relation between the entry of the coal dust and the development of the infection, the witness testified: “Q. Have you known of eyes being lost through gonorrheal infection? A. Yes. Q. Have you ever known gonorrhea to be contracted through coal dust? A. Well, I don’t know from coal dust. I know a lot of cases can be contracted innocently
 
 *165
 
 —hands of other people, towels ...... Q. Do you know of any cases, though, where it has been contracted from coal dust? A. No, I don’t know as I do.”
 

 When asked whether he found any evidence of trauma, Dr. Stahlman replied that “the ulceration of the cornea acted like our usual cases of trauma,” but stated “no trauma to the lids could be seen — no external injury.” He added that he could see no coal dust under the lids.
 

 Upon the vital issue of a causal connection between the alleged accidental entrance of coal dust into the eye and its loss, the most this expert was willing to say, when his testimony is considered as a whole, was that if the infection was present when the dust entered its entry
 
 might
 
 have been the “exciting cause” of the condition which caused the loss of the eye. He testified as follows: “Q. What would you say, doctor, was the exciting cause of this condition which caused the loss of his eye? A. Well,
 
 that is hard to say.
 
 I would think he must have had some injury. Q. Well, if you were given the history of having received this coal dust into his eye would that be sufficient injury to produce the condition? A.
 
 It might.
 
 Q. In the absence of any other history would you say it was? A.
 
 It might.
 
 Q. During your treatment did you find any other evidence of any incident or condition that would be this exciting cause? A. No. Q. Then in the absence of any other would you say that the coal dust was the exciting cause? A.
 
 Well, it may have been. I wouldn’t want to
 
 say.......” (Italics supplied.)
 

 Clearly, this testimony falls below the standard prescribed in
 
 Elonis v. Lytle Coal Co.,
 
 134 Pa. Superior Ct. 264, 3 A. 2d 995, and
 
 Monahan v. Seeds & Durham et al.,
 
 336 Pa. 67, 6 A. 2d 889.
 

 The present case is similar in many respects to that of
 
 Troxell v. Shirk et al.,
 
 130 Pa. Superior Ct. 40, 196 A. 899, in which compensation was refused a hotel chambermaid for the loss of an eye through a gonococcic infection alleged to have been accidentally transferred
 
 *166
 
 to its membrane through the wiping of the member by claimant while handling soiled and infected bed linens and towels. There, as here, it was not definitely shown how or when the germs entered. Although the “might haves” — the possibilities and conjectures — of that case were stronger than in the case now at bar, compensation was disallowed for the reasons set forth at length in the opinion. See also
 
 Easton v. Elk Tanning Co.,
 
 129 Pa. Superior Ct. 535, 195 A. 648.
 

 Judgment affirmed.