Kramer, Appellant, *v.* Susquehanna Collieries Company.

Argued December 12, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Roger J. Dever,* for appellant.

*Henry A. Gordon,* for appellee.

OPINION BY STADTFELD, J., April 15, 1942:

This is a workmen's compensation case.

The claimant in this case is the widow of George Kramer. Decedent met with an accident in the course of his employment on October 24, 1932, by being struck with a brick in the middle of his left shin bone, and died on January 19, 1933 while a patient in the Geisinger Hospital, the cause of death being a strangulated femoral hernia, plus bronchial pneumonia, complicating cellulitis of the left leg with septicemia.

A claim for compensation was filed and after due hearing, the referee made an award. The referee made, inter alia, the following findings of fact: "Sixth: That on October 24, 1932 while engaged at his duties as a brick layer for the defendant, the deceased was struck at the middle of his left shin bone by a falling piece of brick. This occurred about 8:00 to 8:30 in the morning, and about 10:00 of the same morning, he was seized with a severe chill and taken to the local company physician's office, where he was examined and sent home to bed. Deceased at this time, according to the testimony of the company physician, did not mention the injury to his leg. He did, however, tell the company physician on November 8, 1932, about this injured leg, and treatment was accordingly given him. The condition of the leg at that time was described as a mottling at the site of the injury suffered on October 24, 1932.

"Seventh: That on November 14, 1932 the condition of claimant's leg had gotten worse and on that date it was diagnosed as a cellulitis, and on November 25, 1932 the deceased was admitted to the Geisinger Memorial Hospital at Danville, Pa. for treatment. At the Geisinger Hospital deceased gave a history of having a fracture of both bones of his left leg in 1910, which had partially healed and which left a small lump on the anterior surface, and it was at this particular point that the brick had struck him on October 24, 1932. Upon admission to the hospital, an examination revealed the skin over the lower left leg to be shiny and glazed in appearance; there were two drainage incisions present on the internal surface of the leg just below the external malleolus; there were several small red elevated areas over the site of the old fracture; there was swelling up to the junction of the upper third of the leg with a red, advanced border on the inner aspect of the leg. External heat was applied at first, and four days later an incision was made for drainage, and about 800 cubic centimeters of pus was removed. The septicemia which had probably prevailed for some time gradually became worse and the deceased, from post-mortem findings, developed pneumonia and a cough. Some few days prior to his death this cough became severe, and an old femoral hernia became strangulated, and peritonitis set in. Summing up the evidence in this case, your referee finds as a fact that the deceased died on January 10, 1933 from peritonitis, the result of a strangulated femoral hernia plus broncho-pneumonia, complicating cellulitis of the left leg with septicemia, all traceable to his accidental injury of October 24, 1932."

Upon appeal the Workmen's Compensation Board affirmed this award. Thereupon the defendant appealed to the Court of Common Pleas of Dauphin County, which court in an opinion by WICKERSHAM, J., sustained the exceptions filed by the defendant, re-

versed the award of compensation, and directed that judgment be entered for the defendant. From this decision claimant appealed to this court.

Dr. H. L. Foss, originally called on behalf of claimant testified that he is connected with the Geisinger Memorial Hospital at Danville; that the records of the hospital show that decedent stated that on October 24, 1932, he was hit by a brick on the left leg, at the site of an old pre-existing fracture which he sustained in 1910, but which healed normally, but there was a small lump on the anterior surface. He was admitted to the hospital November 25, 1932. We quote from his testimony: "Q. When did the patient develop general septicemia? A. That is also difficult to say; he was septic on admission; his temperature chart showed his temperature on the second day after admission being as high as 102, and it was septic in character throughout and up to the time of his death. Q. Did I ask you what the cause of death, as given here, was, Doctor? A. Yes, you did. Q. What was that? A. Cellulitis of the leg, and septicemia. Q. So, as I understand it, Doctor, the man was admitted here with septic condition of his leg. Was there evidence of the wound on the leg, from the record? A. There was evidence of a previous incision; I believe the wound had been opened some little time prior to his admission here, by his family physician. Q. Doctor, whether or not, in your opinion, the condition that had been opened there, and as you say became septic and was septic when he was admitted here, was that the source of this man's trouble, ending in his death? A. *I think that there is a very close connection with it.* To what extent we must regard the old fracture which occurred in 1910 I cannot say, but it is true that he had broken his leg in 1910; that a lump still remained at the site of that fracture and that from time to time gave him trouble and caused him to return to his doctor for treatment, but, in 1932, 22 years later, he again injured the bone at the same

site by having this brick strike him, following which he developed sepsis, cellulitis, and ultimately died. I think it is possible that he had a long standing fracture that had partially healed. It may have been an osteomyelitis; that I don't know, but *I think it is logical to suppose that the injury sustained as result of the blow from the brick set up an infection which ultimately spread to his blood stream and caused a generalized septicemia.*"

At a subsequent hearing before the referee, about 2½ years later, Dr. Foss was recalled as a witness for the defendant. After having "gone over this case, and reviewed it and made an analysis", he testified: "It is, therefore, my opinion that the patient's direct cause of death was peritonitis, the result of a strangulated, femoral hernia, plus broncho-pneumonia, complicating cellulitis of the leg with septicemia, the cause of which may or may not be traceable to an alleged injury occurring on October 24, 1932. In any event, an old chronic lesion of the tibia, following a fracture twenty years ago, was present and there is a definite possibility that it played an important role in the clinical course and final outcome."

We quote from his cross-examination: "Q Now this is the one picture of a sick man taken to the hospital, is it? A. I don't know that I know what you mean. Q. I will try to make myself clear what I mean. He did have an injured leg, as given in the history at the hospital? A. Correct. Q. He did have a cellulitis? A. He did. Q. He did develop coughing? A. Yes. Q. He did develop a strangulated hernia? A. That's right. Q. He did, as you now work out, develop pneumonia? A. Yes. Q. All of which could have happened from an injured leg? A. Not necessarily. Q. I say it could? A. Oh, yes. Q. Are you prepared now to say it did not? A. No."

It is our opinion that the testimony of Dr. Foss given at the earlier hearing meets the standards of certainty

of medical opinion required by our appellate courts. It has frequently been stated in the decisions that such testimony need not be given in any particular words: *Johnston v. Payne-Yost C. Co. et al.,* 292 Pa. 509, 515, 141 A. 481; *Elonis v. Lytle Coal Co.,* 134 Pa. Superior Ct. 264, 3 A. 2d 995; *Pelosi v. Overbrook Tile Co. et al.,* 138 Pa.. Superior Ct. 30, 10 A.. 2d 118. *Yerko v. Clearfield Bit. Coal Corp.,* 145 Pa. Superior Ct. 269, 21 A. 2d 97. While the testimony of Dr. Foss at the subsequent hearing appears uncertain and inconclusive in comparison with that given by him at the prior hearing, there is no such inconsistency and contradiction as would warrant us in saying that the earlier opinion expressed was a mere guess. See, *Koch v. William Mann Co. et al.,* 126 Pa. Superior Ct. 366, 191 A. 230. Standing alone the earlier testimony was legally competent and of the required standard of certainty; the subsequent testimony did not destroy its effect as a basis for the findings of fact by the compensation authorities.

In a workmen's compensation case, findings of the referee approved by the board and supported by competent evidence are as conclusive upon the courts as the verdict of a jury, and this applies to the proper inferences to be drawn therefrom: *Johnson v. Valvoline Oil Co.,* 131 Pa. Superior Ct. 266, 200 A. 224 and cases cited therein.

Claimant herself testified that decedent never missed a day's work on account of his leg.

Upon this appeal it is not our function to weigh the conflicting testimony of the medical witnesses; the sole power conferred and duty imposed upon us is to ascertain whether there was evidence legally competent to sustain the findings of the board and whether the law has been properly applied to these findings. *Puza v. P. & R. C. & I. Co.,* 98 Pa. Superior Ct. 139.

After a careful consideration of the record we are

of the opinion that there is sufficient legally competent evidence to sustain the award.

The assignments of error are sustained, the order of the court below is reversed and the record is remitted with directions to enter judgment on the award in favor of appellant.