Rehm *v.* Union Collieries Company, Appellant.

462

Argued April 15, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Edw. J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*A. L. McLaughlin Jr.,* for appellee.

OPINION BY RENO, J., July 16, 1943:

This is an appeal by the employer from the judgment of the court below which affirmed the decision of the Workmen's Compensation Board upon the employer's petition to terminate an agreement for compensation.

The agreement made July 15, 1938, recites an accident on June 22, 1938 and describes the injury as "Shoveling coal—felt pain in back. Right sacro-iliac sprain." Compensation was provided for total disability for an indefinite period and paid under the agreement until March, 1939. On August 28, 1939, the employer filed a petition to terminate the agreement

alleging that (a) claimant's disability ceased on April 17, 1939, when he was able to return to work and (b) claimant did not sustain an accident in the course of his employment and, therefore, the agreement should be set aside. The referee found that claimant had sustained an injury, that he was fifty per cent partially disabled, that the employer was entitled to a modification of the agreement to that extent, and made an award accordingly. The board affirmed the referee.

As Judge RHODES said in *Svestka v. Union Collieries Co.,* 149 Pa. Superior Ct. 468, 469 27 A. 2d 675: "The case presents nothing new and simple and well-established principles govern it." The compensation agreement was prima facie evidence of a compensable accident: *Williams v. Baptist Church,* 123 Pa. Superior Ct. 136, 143, 186 A. 168. The burden of proof was upon the employer which sought to change the status created by the agreement: *Carson v. Real Estate-Land Title & Trust Co.,* 109 Pa. Superior Ct. 37, 40, 165 A. 677. The extent of claimant's loss of earning power is purely a factual question to be determined by the compensation authorities from the competent evidence and the proper inferences to be drawn therefrom: *Carson v. Real Estate-Land Title & Trust Co.,* supra, p. 41. On appeal, our function is merely to ascertain whether there is sufficient competent evidence to sustain the finding of the board: *Wilkinson v. Jones & Laughlin Steel Corp.,* 139 Pa. Superior Ct. 607, 608, 13 A. 2d 125.

The only testimony relating to the accident was that of claimant. He testified that while carrying timber in the employer's mine he stumbled, fell and slightly bruised his elbow. When he got up, he started to shovel coal, "put the shovel in the coal and when I got the shovel of coal half way raised the pain caught me in the back, and I fell on my face and my buddy took me home." With this uncontradicted testimony before it, the board had sufficient competent testimony to support

its finding that "The proximity between claimant's fall, which unquestionably was an accident, and his sufferance of pain in his back, while attempting to shovel the coal, leads us to believe that the pain was the result of the fall, and manifested itself when claimant tried to work." Moreover, as already stated, the burden of proof was upon the employer and it chose not to contradict claimant's testimony.

The employer contended that claimant's disability was due, not to the accident, but to a chronic physical condition of his back prior to the accident. Upon this point both employer and claimant presented the testimony of physicians who had examined the claimant. We shall review their testimony briefly.

Dr. Snyder, the company's surgeon, examined claimant on September 5, 1939, and testified that the condition of his "fifth lumbar vertebrae and his right sacroiliac joint is an old condition. It has been there for a long time in my opinion" and that this condition antedated the accident. It was his opinion that claimant was fifty per cent disabled for general labor.

Dr. Hobaugh, called by the employer, examined claimant before and after the accident. He saw him first on August 25, 1937, when claimant complained of pain in the region of lumbo-sacral joint while shoveling coal. He diagnosed the condition as "a sprain of the lumbo-sacral junction, bilateral." Claimant returned to work two days later. He saw claimant again on November 2, 1937, when he treated him for the same condition and he returned to work two days later. The witness also examined claimant on the day of the accident and at intervals thereafter. He testified that the complaints in June, 1938, concerned "relatively the same area and the diagnosis was substantially the same." Upon cross examination he was asked: "Q. If the record in this case indicates ["Wage Information In 26 Weeks Preceding Accident" incorporated into the compensation

agreement] that in 26 weeks preceding the accident of June 22, 1938, the mine worked 74 days and the claimant worked 77 days, would that indicate to you that he had no disability during that period?" He answered, "A. No evident disability, sir." He also testified that claimant was disabled fifty per cent.

Dr. Wallace, an orthopedic surgeon, called by claimant, testified in part: "A. ...... What I believe has happened to this man, he has had an old infectious arthritis of the right sacroiliac joint which is definitely fixed, but in this injury he has torn down some adhesions which would have given him crepitation and which is causing symptoms. I believe that if this man had a light job and kept on, that his condition will gradually pass away. Q. Now, Doctor, from the history that you received, will you state whether or not the condition of the right sacroiliac joint that you found in both examinations is due in any way to the accident of June 22, 1938? A. What is the first part of that question again? Q. From the history that you received will you state whether or not the condition of the right sacroiliac joint that you found in both examinations—A. The condition itself, no. He has had that a long time, but he has had probably a tearing up of adhesions around that old healed joint which is now causing him his trouble. Q. Was the tearing caused by the accident which you had a history of? A. Yes, it was caused by the accident that I had a history of. Q. And you had a history of his occupation as a coal loader prior to the accident? A. Yes. Q. Is he able to do that kind of work, at either one of your examinations? A. No. ...... Q. And so far as his former occupation as coal loader, he is totally disabled? A. Yes, he can do light work. Q. And so far as general labor is concerned, what percentage of disability does he have? A. I would say about 50%."

We have quoted Dr. Wallace's pertinent testimony

verbatim because the employer vigorously contends that it must be eliminated under *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995, and other cases, because he testified that claimant had "*probably* a tearing up of adhesions around this old healed joint." However, even if the answer were eliminated, the next answer would remain and it is positive enough: "Q. Was the tearing caused by the accident which you had a history of? A. Yes it *was* caused by the accident that I had a history of". Compare *Kramer v. Susquehanna Collieries Co.*, 148 Pa. Superior Ct. 467, 25 A. 2d 607.

The irresistible conclusion is that the employer failed to meet the requirements of the burden of proof laid upon it; that it failed to establish by the fair weight of the evidence that claimant was disabled by an antecedent physical condition and not from the accident of June 22, 1938; and that there is sufficient competent evidence to sustain the action of the compensation authorities.

Judgment affirmed.