Mullin, Admrx. *v.* Ebert et al., Appellants.

Argued October 4, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for appellants.

*J. George Lipsius,* for appellee.

OPINION BY RENO, J., January 25, 1945:

The appeal in this workmen's compensation case is by the employer's insurance carrier from the judgment entered upon an award for total disability, caused by the aggravation of a latent syphilitic infection, from the time of the accident to the date of claimant's death, which occurred during the pendency of these proceedings. Claimant's death having been suggested of record, his administratrix was substituted as a party and is appellee here. Appellant concedes that claimant suffered an accidental injury in the course of his employment and that he was disabled, but denies that the evidence establishes a causal connection between the injury and the subsequent disability.

On June 16, 1939, claimant, in the course of his employment as a truck driver for defendant, Ebert, was delivering a truckload of lumber to the Reading Railroad at 22nd Street and Allegheny Avenue in Philadelphia. He parked his truck at a point on 22nd Street and walked across the railroad tracks to inquire from a Reading employe where the lumber should be de-

posited, and while crossing the tracks on his return to the truck he was struck on the left side of his face and body by an electric train which had approached unobserved. The impact threw claimant a distance of ten feet and left him in a dazed condition. He was taken to a hospital where his injuries were diagnosed as hematoma of the left side of the face, contusion of the left leg, and three broken teeth, but x-ray examination showed no fractures of the jaw or leg. Claimant was returned to his home early that evening, and he was never able to secure employment again. It is not clear from the record how much medical attention claimant received between the time of the accident and December 27, 1940, when he was examined by Dr. Herbert Freed, but during that period claimant, members of his family, and his friends observed continually developing manifestations of failing memory, thickness of speech, and a shaking in the left arm. On December 27, 1940, Dr. Freed subjected claimant to a physical examination, but had no laboratory tests made, and diagnosed claimant's infirmities as chronic encephalitis.

The first hearing in the case was held on March 7, 1941, at which time Dr. Freed, testifying on behalf of claimant, stated that in his opinion the cause of the condition was traumatic, "that the blow, the accident was sufficient to produce circulatory changes in the brain which, in the course of time, manifested themselves in symptoms as the portions of the brain involved tended to degenerate and could no longer function." The doctor admitted on cross-examination that although it was the accepted practice to have laboratory tests made as a part of the examination in such cases, he had not done so in this instance because he felt the condition was not due to syphilis and that syphilis very rarely, almost never causes the results here observed. Dr. Harry Hudson, testifying for defendants, asserted that in his opinion the cause of claimant's condition was obscure and could not be accurately diagnosed without a

series of laboratory tests and a period of prolonged observation. The board thereupon determined to refer claimant to an impartial physician for examination.

The second and final hearing was held on November 12, 1941. The impartial physician appointed by the board did not appear to testify, but the records of the Philadelphia General Hospital and the Philadelphia State Hospital, where claimant had been examined and treated and to which latter institution he was then confined, were admitted into evidence without objection. The records of the Philadelphia General Hospital showed that when claimant was admitted there on May 8, 1941, his ailment was provisionally diagnosed as "post traumatic psychosis" and "brain injury following trauma and post-traumatic deterioration." X-rays taken there showed that claimant's skull had not been fractured, but blood and spinal fluid examinations revealed that he was in an advanced stage of syphilis. When claimant was removed to the Philadelphia State Hospital on June 9, 1941, his discharge note at the Philadelphia General Hospital disclosed that his condition had been diagnosed as "general paresis with psychosis." At the Philadelphia State Hospital, after further observation and blood and spinal fluid examinations, the diagnosis was "psychosis with syphilitic meningo-encephalitis."

Dr. Freed, recalled by claimant at the second hearing, testified that he had followed the examination and laboratory studies made on claimant and that as a result of them his diagnosis had been "more exactly defined" to general paresis or syphilis of the brain. The doctor stated that in his opinion claimant had syphilis without external symptoms, and that the disease was activated by the trauma of the accident. On cross-examination Dr. Freed testified that although he had previously stated that syphilis "very rarely to never" caused a condition akin to claimant's, he thought this was one of the rare cases, and when asked whether there was any inconsistency between his first and second

diagnoses, he answered: "Well, from a broad stand point, I would say, now, no. As much as post traumatic encephalathy would include a case of paresis precipitated by trauma and when you say that a patient has a paresis, there may be or may be not trauma and this is an unusual case and there is a case for a patient to have syphilis and have no condition or symptoms until after a trauma to the head and then get a paresis. Those cases are well known." Dr. Freed testified further that the trauma required to activate latent syphilis need not necessarily be severe enough to produce unconsciousness.

Dr. Robert A. Matthews testified for defendants that in his opinion claimant's disability resulted from a natural progression of the disease of syphilis and had no connection with the accident. He gave as his reasons for the conclusion the facts that the signs of paresis became apparent very shortly after the accident, without the intervention of what he thought to be a period of time sufficiently long to be consistent with the theory of aggravation of a sub rosa syphilis, and that the blow received by claimant was not severe enough to bring about the result attributed to it. Dr. Matthews said he believed claimant would have demonstrated symptoms of syphilis without the occurrence of the accident, and that the accident merely served to call claimant's attention to the developing signs of the diseased condition which until that time had gone unnoticed.

Certain rudimentary principles of law apply to this appeal and can be briefly stated. Where a claimant relies upon the aggravation of a pre-existing disease as a basis for recovery, his is the burden of proving that he was suffering from the disease at the time of the accident and that the accident, as distinguished from a normal progression of the disease, became the super-inducing cause of his disability. *Dewees v. Day,* 291 Pa. 379, 140 A. 345; *Saroka v. P. & R. C. & I. Co.,* 87 Pa. Superior Ct. 503; *Royko v. Logan Coal Co.,* 146 Pa.

Superior Ct. 449, 22 A. 2d 434. This burden must be carried by the production of expert medical testimony showing beyond mere conjecture the facts necessary to sustain the award. *Urbany v. Frick Coke Co.,* 140 Pa. Superior Ct. 534, 13 A. 2d 905; *Shashura v. Vesta Coal Co.,* 146 Pa. Superior Ct. 161, 22 A. 2d 441; *Euker v. Welsbach Street Lighting Co.,* 149 Pa. Superior Ct. 78, 25 A. 2d 758. The credibility of conflicting medical witnesses is, however, a matter for the consideration of the compensation authorities, and if the facts found by them are supported by substantial competent evidence, this court will not make an independent determination of the facts by reason of any conclusions it may reach with respect to the weight of the testimony. *Russell v. Scott Paper Co.,* 140 Pa. Superior Ct. 84, 13 A. 2d 81; *Hamer v. W. Virginia Pulp & Paper Co.,* 144 Pa. Superior Ct. 144, 18 A. 2d 452; *Williams v. Susq. Collieries Co.,* 148 Pa. Superior Ct. 540, 25 A. 2d 751.

Appellant's principal argument is that the testimony of Dr. Freed, without which the award must fall, is valueless because there is so great a conflict between the diagnoses given by the doctor at the first and second hearings that any conclusions founded thereon would amount to no more than a mere guess, citing *Mudano v. Phila. Rapid Transit Co.,* 289 Pa. 51, 137 A. 104. Aside from the fact that the *Mudano* case does not apply with all its vigor in compensation proceedings (*Jones v. United Iron & Metal Co.,* 99 Pa. Superior Ct. 394, 403; *Koch v. William Mann Co.,* 126 Pa. Superior Ct. 366, 372, 191 A. 230), where the rules of evidence are not enforced with the same strictness as in jury trials, the statements of Dr. Freed on the two occasions do not exhibit "absolute contradiction in their essential conclusions": *Mudano v. Phila. Rapid Transit Co.,* supra, p. 60. There was never any wavering in Dr. Freed's opinion that the accidental injury was the causative factor responsible for claimant's disability; the only variation in his testimony was in the degree by which he

narrowed his diagnosis of the physical condition in which claimant was found. The "chronic encephalitis" of traumatic origin described by Dr. Freed at the first hearing was a generic term including the later diagnosis of "paresis precipitated by trauma" made after the doctor had the benefit of the laboratory studies. The increased certainty of the later testimony did not place the two declarations in such apposition as to render the finding of disability from the aggravation of an inactive syphilitic condition a pure speculation on the part of the compensation authorities. Cf. *Jones v. United Iron & Metal Co.*, supra; *Koch v. William Mann Co.*, supra; *Kazeroski v. Susquehanna Col. Co.*, 127 Pa. Superior Ct. 259, 193 A. 356; *Kramer v. Susq. Collieries Co.*, 148 Pa. Superior Ct. 467, 25 A. 2d 607.

The contention that there was no proof that claimant had latent syphilis at the time of the accident is without merit. After the results of the laboratory tests were made known, both Dr. Freed and Dr. Matthews were of the opinion that claimant had already contracted the disease when he was injured, and the only point at which the medical witnesses disagreed was on the question whether the accident had any accelerating effect on the normal progress of the malady.

Appellant's remaining arguments dispute the medical correctness of Dr. Freed's testimony, and are addressed to the wrong tribunal. Medical literature is cited to support the contentions that latent syphilis cannot be activated unless there is traumatic injury to the brain, which does not appear here, and that the symptoms of a dormant syphilis that has been awakened by a blow would not in any event be manifest very shortly after the activating injury. These objections go to the weight of the testimony given by Dr. Freed, and it is sufficient to say that such matters are not within our province. Furthermore, appellant's own witness, Dr. Matthews, while his professional opinion followed the lines now

pursued by appellant, admitted that claimant's theory of the case was within the bounds of possibility.

Judgment affirmed.