98 N.J. Super. 590 (1967)
238 A.2d 196
JUDITH RITT, PLAINTIFF,
v.
LEO RITT, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 13, 1967.
*592 Mr. Jerome L. Liebowitz for plaintiff.
Mr. Jerrold M. Fleisher for defendant (Messrs. Back and Nussman, attorneys).
*593 Mr. Milton D. Liebowitz for Dr. Stanley Pogul (Messrs. Liebowitz, Krafte and Liebowitz, attorneys).
HECKMAN, J.S.C.
This matter comes before the court on motions wherein defendant seeks an order directing plaintiff and her physician, Dr. Stanley Pogul, to answer questions propounded to them at depositions respectively taken on September 29 and November 7, 1967.
By complaint filed July 24, 1967 plaintiff sued under N.J.S.A. 2A:34-24 for separate maintenance, alleging that defendant's extreme cruelty caused her to leave him and that defendant has refused and neglected to maintain and provide for her.
By his answer defendant generally denied the allegations of the complaint and specifically reserved the right to file a counterclaim.
Prior to the instant motions defendant had moved for an order quashing the subpoena served on Dr. Stanley Pogul, which the court denied. At the taking of his deposition he refused, under instructions of his own counsel, to answer questions as to the complaints made to him by plaintiff on her initial visit; to describe the course of treatment prescribed for her; to disclose whether during his treatment of plaintiff she indicated any difficulties with her marriage to defendant, to disclose any information given him with respect to any difficulty which existed with her prior to her marriage to defendant, and generally refused, under counsel's direction, to answer any questions concerning complaints plaintiff had made to him, his findings from either examination, or observation, and his course of treatment.
At the taking of plaintiff's deposition her counsel generally objected on the ground that the questions asked did not relate to finances, support, money matters within the marriage, income, expenses and like areas, but asserted that the questions asked were in the nature of a "fishing expedition" into other areas. The questions objected to related to an alleged premarital social disease and plaintiff's treatment therefor. *594 Nothing before the court indicates that the husband had knowledge of the condition for which his wife sought treatment.
Two questions are presented for determination. The first is whether a medical doctor specializing in psychiatry falls within the purview of the privilege accorded psychologists under the Practicing Psychology Licensing Act, L. 1966, c. 282; N.J.S.A. 45:14B.
N.J.S.A. 45:14B-28 provides as follows:
"The confidential relations and communications between a licensed practicing psychologist and the individuals with whom he engages in the practice of psychology are placed on the same basis as those provided between attorney and client, and nothing in this act shall be construed to require any such privileged communications to be disclosed."
There is no proof before the court that Dr. Stanley Pogul is a licensed psychologist and therefore entitled to the privilege.
Members of other professional groups doing work of a psychological nature (N.J.S.A. 45:14B-8) are not prevented from doing work of a psychological nature consistent with the accepted standards of their respective professions, provided however, that they do not hold themselves out to the public by any title or description stating or implying that they are psychologists or are licensed to practice psychology. Hence, though they may apply psychological principles and procedures in the assessment, counseling or psychotherapy of individuals for the purposes of promoting the optimal development of their potential or the amelioration of their personality disturbances and maladjustments as manifested in personal and interpersonal situations, they need not have a license. However, if they hold themselves out to the public as psychologists or that they are licensed to practice psychology, they must obtain a license. This statute, the court finds, does not bring a medical doctor specializing in psychiatry within the purview of the statute *595 so as to place the confidential relations and communications between him and his patient on a basis comparable to those between an attorney and his client.
It is elementary that a statute in derogation of the common law, such as that being considered, must be strictly construed. Had the Legislature intended to grant immunity to confidential relations and communications between a licensed practicing physician and his patients it seemingly would have done so as it has for lawyers, newspapermen, clergymen and married persons.
Courts will interpret and enforce the legislative will as written and not according to some supposed unexpressed intention. Petrangeli v. Barrett, 33 N.J. Super. 378 (App. Div. 1954). The legislative intent is to be gleaned from the language of the statute; courts cannot arbitrarily expand the scope of the statute beyond the plainly expressed legislative intent, and should not, under guise of interpretation, extend a statute to include persons not intended. Belfer v. Borella, 9 N.J. Super. 287 (App. Div. 1950). A strained construction cannot be adopted in order to give effect to what a court may think is the unexpressed intention of the Legislature. Publix Asbury Corp., Inc. v. City of Asbury Park, 18 N.J. Super. 286 (Ch. Div. 1951); affirmed 18 N.J. Super. 192 (App. Div. 1952).
In Hague v. Williams, 37 N.J. 328 (1962), the court said:
"The common law did not recognize a physician-patient privilege and, although approximately two-thirds of the States have adopted the privilege by statute, New Jersey is not among this number. 8 Wigmore, Evidence, § 2380 (McNaughton Rev. 1961). See, e.g. Bober v. Independent Plating Corp., 28 N.J. 160 (1958); Gilligan v. International Paper Co., 24 N.J. 230 (1957); State v. Gruich, 96 N.J.L. 202 (E. & A. 1921); see also N.J.S. 2A:84A-17 to 32.
We have, then, no expressed public policy pointing to a general prohibition against testimonial revelation of information acquired during the physician-patient relationship, but, on the contrary, our policy is to expose such information to view when it is relevant to the resolution of litigation. See Report of the Committee on the Revision of the Law of Evidence to the Supreme Court of New Jersey *596 (1955). This approach is in accord with the general theory that society has a right to testimony and that all privileges of exemption from this duty are exceptional. See 8 Wigmore, supra, § 2192.
It is for this reason that creation of such a privilege has been stated to be justified only upon satisfaction of four fundamental conditions, the last of which being:
`(4) the injury that would inure to the relation (physician-patient) by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of the litigation.' 8 Wigmore, supra, § 2285, p. 527.
From what has already been said, it is obvious that the policy of this State regards that condition as being unfulfilled. See also id. § 2380 (a)." (at p. 334).
The court in Hague referred to the Principles of Medical Ethics, § 9 (1957) published by the American Medical Association, which states:
"A physician may not reveal the confidences entrusted to him in the course of medical attendance, or the deficiencies he may observe in the character of patients, unless he is required to do so by law or unless it becomes necessary in order to protect the welfare of the individual or of the community."
The court held that the patient does not enjoy an absolute right, but rather possesses a limited right against disclosure of his symptoms and condition to his doctor, subject to exceptions prompted by the supervening interest of society. This limited right of nondisclosure was acknowledged in Hague even though New Jersey has no statute creating a testimonial privilege. The medical licensing statute does not proscribe betrayal of confidential information. See N.J.S.A. 45:9-16.
When plaintiffs in Hague filed their claim they vitiated any right to nondisclosure they might have had. In the present case plaintiff, as revealed by her deposition, has heretofore authorized the physician to furnish an insurance company with information, not only on the form he completed for the company but also as to his diagnosis and treatment of plaintiff. Through the institution of her action plaintiff, in the court's opinion, has lost any right *597 to nondisclosure she may have had, and defendant was justified in seeking the relevant information from her and her physician pertaining to her claim of unjustifiable abandonment and failure to support. For reasons herein expressed, the court directed Dr. Pogul to answer the questions posed.
The second question is the extent to which discovery proceedings may be permitted in a separate maintenance action. Under N.J.S.A. 2A:34-24 there are two essential elements of the cause of action: (a) that the husband has without justifiable cause abandoned his wife or separated himself from her, and (b) he has refused or neglected to maintain and provide for her. Waltz v. Waltz, 16 N.J. Super. 119 (App. Div. 1951); Friederich v. Friederich, 6 N.J. Super. 102 (App. Div. 1950).
In his answer defendant generally denies the allegations in the complaint, thus putting in factual dispute the two essential elements stated.
By exclusion, R.R. 4:98-5 permits discovery without court order in separate maintenance actions. Oral depositions may therefore be taken (R.R. 4:16) regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. Though McChesney v. McChesney, 91 N.J. Super. 523 (Ch. Div. 1966), holds that there is no open door to unlimited discovery in a separate maintenance action, it is apparent the trial judge there took into consideration the two essential elements requisite of proof in such proceedings, namely, failure to support and unjustifiable abandonment. He went on to say, "Discovery in such a proceeding is limited to matters of assets, income, etc.," (at p. 525; emphasis added), citing Wheeler v. Wheeler, 48 N.J. Super. 184 (App. Div. 1957). "Et *598 cetera" by its very term means: "And other things; and the rest; and so forth," as defined in Funk & Wagnalls, Standard College Dictionary (1963).
In Wheeler the wife sued for separate maintenance and the husband counterclaimed for divorce. However, that case does not limit depositions in a maintenance action solely to examination into the financial means of the respective spouses. It simply states, in connection therewith, that "the needs of the wife is a matter of prime importance." (at p. 196).
As stated in McChesney, supra, that case was
"* * * a consolidation of a separate maintenance action supplemented by specific acts of extreme cruelty apparently seeking divorce from bed and board, and a later action for divorce by the same plaintiff on the ground of extreme cruelty.
The answer to the earlier action is denial. The defense of provocation is given to the supplemental complaint. The answer to the divorce action is denial with defenses of provocation, admissions of adultery by plaintiff without further specification, and adultery by plaintiff with a named individual."
The court therein rightly concluded that "Defendant was without right to depose plaintiff on any facts constituting a defense to the complaint as supplemented." (At p. 526; emphasis added). Depositions, interrogatories or admissions pursuant to R.R. 4:16 to 4:23 and 4:26 to 4:28 were not allowed where no good cause therefor was shown. R.R. 4:98-5.
Nowhere in the rules is there any directive limiting discovery in separate maintenance actions solely to the questions of support. McChesney involved multifarious actions, whereas this case is a simple separate maintenance action, with an answer of general denial and the right to file a counterclaim being reserved. Consequently, the cases are not apposite.
In Tholander v. Tholander, 34 N.J. Super. 150 (Ch. Div. 1955), the wife filed a complaint for separate maintenance. Defendant filed a counterclaim for absolute divorce. Plaintiff's application for taking defendant's deposition *599 was denied, since it was within the scope of R.R. 4:98-5 and failed to show "good cause" as therein required. Each application for discovery in actions for divorce or nullity must be evaluated upon the circumstances appearing from all of the pleadings and then determined in the sound discretion of the court. No similarity exists between Tholander and this case.
Depositions in separate maintenance actions are not confined to the sole issue of finances but may encompass both prerequisites under N.J.S.A. 2A:34-24 as hereinbefore indicated.
An order will be entered directing plaintiff and her physician to answer the questions respectively propounded to them on September 29 and November 7, 1967.