## Holtzman v. Zimmerman

*Catherine M. Mahady-Smith,* for plaintiff.
*Joseph C. Phillips,* for defendant.

BAYLEY, *J.*, March 9, 1988—This is a motion for a protective order in a medical malpractice action pursuant to Pennsylvania Rule of Civil Procedure 4012. Defendant, Dr. Zimmerman, is a family practitioner who maintains an office at Seidel Memorial Hospital, Mechanicsburg, Pa. Suit was commenced against him and Seidel Memorial Hospital by complaint on October 14, 1986.[1]

From the complaint and the record to date, it appears that plaintiff, Anna Holtzman, became a patient of defendant in May, 1980. On January 14, 1985, she complained to him of pain and hearing loss in her left ear. In the course of his examination, defendant syringed her left ear with warm water in order to remove wax. Her immediate physical reaction to this treatment was "some pain and slight dizziness." Defendant prescribed an antibiotic and instructed her to return if the problem persisted. As a result of continued pain and dizziness, she contacted Dr. Kwan Won on January 16, 1985. Dr. Won di-

1. The hospital was subsequently dismissed from the action by agreement of the parties.

agnosed her as having a perforation of the left tympanic membrane and an accompanying middle ear infection. Dr. Won thereafter performed two tympanoplasty procedures in order to surgically reconstruct the left ear drum.

A documented medical history existed at the time defendant rendered treatment. This documentation involved the medical treatment plaintiff received from other physicians prior to becoming defendant's patient. Plaintiff contends that defendant knew, or should have known, that she had been previously diagnosed as having a perforated left tympanic membrane and that defendant was negligent in syringing the ear with water. She alleges that a permanent hearing loss was caused by defendant's negligent treatment.

Plaintiff's medical history involving her left ear includes an examination by Dr. Norman Woldorf in February, 1977. This examination revealed a dry perforation of the left tympanic membrane. Dr. Woldorf recommended a tympanoplasty procedure but plaintiff declined to undergo the surgery. Deciding that no further medical therapy was indicated at that time, Dr. Woldorf discharged her from follow up care. Dr. Woldorf has not rendered any further treatment to plaintiff since the February, 1977 examination.

After this suit was instituted defense counsel for Dr. Zimmerman contacted Dr. Woldorf, ex parte, and requested that he review and evaluate the treatment rendered by defendant. Dr. Woldorf agreed to review the case materials and further agreed to render an opinion on behalf of defendant. Thereafter, defense counsel informed plaintiff's counsel that Dr. Woldorf had agreed to testify as a defense expert and that he wanted to perform a hearing test on plaintiff. Plaintiff's counsel registered an initial ob-

jection to Dr. Woldorf serving as an expert witness. Defense counsel subsequently wrote to plaintiffs' counsel designating Dr. Woldorf as a defense expert witness for trial and requesting that a hearing test be scheduled. Plaintiff's counsel responded by filing this motion for a protective order.

Plaintiff seeks an order prohibiting defendant from engaging in further ex parte discussions with any of plaintiff's treating physicians, including Dr. Woldorf, and prohibiting the defense from calling any of plaintiff's treating physicians, including Dr. Woldorf, as defense expert witnesses at trial. The motion has been briefed and argued and is ready for disposition.

## DISCUSSION

When a civil suit has been instituted may defense counsel conduct ex parte discussions with any of plaintiff's prior treating physicians and/or retain them as defense expert witnesses? No Pennsylvania appellate court has ever precisely addressed these issues. However, the United States District Court for the Middle District of Pennsylvania in *Manion v. N.P.W. Medical Center of N.E. Pennsylvania Inc. et al.*, no. 86-0717, December 8, 1987, as well as several Pennsylvania trial courts, have addressed these issues.

A number of jurisdictions have allowed defense counsel to engage in ex parte discussions with plaintiffs' treating physicians. These courts have concluded that this informal method of discovery was permissible based upon the following considerations: decreased litigation costs; early evaluation and settlement of claims; elimination of non-essential witnesses; desirability of the voluntary exchange of medical information; greater spontaneity and candor in interviews than in depositions; and

easier scheduling of interviews versus depositions. See *Green v. Bloodsworth,* 501 A.2d 1257 (Del. Super. 1985); *State ex rel. Stufflebaum v. Applequist,* 694 S.W.2d 882 (Mo. Ap. 1985); *Doe v. Eli Lilly & Co. Inc.,* 99 F.R.D. 126 (D.D.C. 1983); *Arctic Motor Freight Inc. v. Stover,* 571 P.2d 1006 (Alaska 1977); *Trans-world Investments v. Drobny,* 554 P.2d 1148 (Alaska 1976). Additionally, these courts have held that once a patient places his physical condition in issue, any right of nondisclosure that he may have retained against his physician as part of the physician-patient relationship is forfeited; in other words, the physician becomes available for an ex parte interview just like any other person. See *Green; Arctic Motor Freight; Lazorick v. Brown,* 195 N.J. Super. 444, 480 A.2d 223 (1984); *Sklagen v. Greater Southwest Community Hospital,* 625 F.Supp. 991 (D.D.C. 1984); *Lind v. Canada Dry Corp.,* 283 F.Supp. 861 (D.Minn. 1968); *Gailitis v. Bassett,* 5 Mich.App. 382, 146 N.W.2d 708 (1966); *Hague v. Williams,* 37 N.J. 328, 181 A.2d 345 (1962). As set forth in *Doe,* supra, "As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance." 99 F.R.D. at 128.

Another rationale relied upon in those jurisdictions that allow for ex parte discussions is that such interviews are not prohibited by the rules of discovery. These courts take the position that discovery rules do not purport to set forth the only methods by which relevant information may be obtained, i.e., the rules were never conceived as exclusive modes of discovery, investigation and preparation for trial. These courts view the ex parte interview as an ef-

fective discovery procedure which operates outside of and is not precluded by the rules of discovery. See *Green; Lazorick; Sklagen; Stempler v. Speidell,* 100 N.J. 368, 495 A.2d 857 (1985); *Coralluzzo v. Fass,* 450 So.2d 858 (Fla. 1984). They note that one attorney should not be permitted to overhear his opponent's interrogation of a witness as that could invade the work product of the opponent and reveal trial strategy, mental impressions and legal theories, while their own preparation would be under no such scrutiny. See *Stufflebaum; Doe.*

Other jurisdictions have concluded that defense counsel may not engage in ex parte discussions with plaintiffs' prior treating physicians, reasoning that counsel is restricted to the formal methods of discovery and that applicable federal and state rules of civil procedure do not contemplate ex parte interviews. See *Karsten v. McCray,* 157 Ill.App.3d 1, 109 Ill.Dec. 364, 509 N.E.2d 1376 (1987); *Petrillo v. Syntex Laboratories Inc.,* 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952 (1986); *Roosevelt Hotel Ltd. Partnership,* 394 N.W.2d 353 (Iowa 1986); *State ex rel. Klieger v. Alby,* 125 Wis.2d 468, 373 N.W.2d 57 (1985); *Mull v. String,* 448 So.2d 952 (Ala. 1984); *Miles v. Farrell,* 549 F.Supp. 82 (N.D. Ill. 1982); *Jaap v. District Court of Eighth Judicial District,* 623 P.2d 1389 (Mont. 1981); *Weaver v. Mann,* 90 F.R.D. 443 (D.N.D. 1981); *Anker v. Brodnitz,* 98 Misc.2d 148, 413 N.Y.S.2d 582 (1979), affirmed, 73 A.D.2d 589, 422 N.Y.S.2d 887; *Wenninger v. Muesing,* 307 Minn. 405, 240 N.W.2d 333 (1976); *Cwick v. City of Rochester,* 54 A.D.2d 1078, 388 N.Y.S.2d 753 (1976); *Fields v. McNamara,* 189 Colo. 284, 540 P.2d 327 (1975); *Garner v. Ford Motor Company,* 61 F.R.D. 22 (D.Alaska 1973).

Among rationales relied upon in those jurisdic-

tions which hold that formal discovery methods provide the only means by which defense counsel may contact plaintiffs' treating physicians are: formal discovery preserves the sanctions and protections available under procedural rules; the presence of plaintiff's counsel at formal discovery proceedings prevents disclosure of patient confidences and eliminates inquiries into irrelevant matters; defense counsel could use ex parte discussions to improperly influence the physician's testimony; procedural rules are promulgated by the courts and therefore represent judicial policy; and formal discovery adequately protects the interests of the plaintiff and the physician while affording defense counsel access to all relevant medical information. See *Karsten; Roosevelt Hotel; Alby; Anker; Wenninger; Alston v. Greater Southeast Community Hospital,* 107 F.R.D. 35 (D.D.C. 1985).[2]

Another reason advanced by the courts that oppose ex parte interviews focuses on the nature of the physician-patient relationship. These courts have found that the nature of this relationship imposes a fiduciary obligation on a physician as it is one of loyalty and trust in which utmost good faith must be exercised. They note that a physician must refrain from engaging in any conduct that is inconsistent with this obligation. These courts have accepted the position that public policy favors the confidential and fiduciary nature of the physician-patient relationship such as to sanction

---

2. Although expressly prohibitng ex parte interviews, some courts stated that informal discussions were not to be discouraged if they would result in the disposition of the claim, provided that they were conducted in the spirit of cooperation and with the full permission of plaintiff and his counsel. See *Roosevelt Hotel; Wenninger; Jaap.*

against ex parte discussions. These courts have held that even when a patient files suit he does not automatically consent to the termination of the confidential relationship existing between him and his physician; he consents only to the release of certain medical information relevant to the physical condition at issue. See *Petrillo; Piller; Miles; Hamonds v. Aetna Casualty & Surety Co.*, 243 F.Supp. 793 (N.D.Ohio 1965). A related reason set forth by these courts is that the patient has a right to believe that his physician is faithfully executing the ethical obligations imposed by the medical profession. They note that a physician may be subject to liability for breach of the patient's alleged right to privacy or to professional discipline for ethical misconduct. See *Petrillo; Schwartz; Anker; Wenninger; Hammonds; Tower v. Hirschhorn*, 397 Mass. 581, 492 N.E.2d 728 (1986); *Schaffer v. Spicer*, 88 S.D. 36, 215 N.W.2d 134 (1974).

There is also a concomitant split of authority on the issue of whether the defense may call plaintiffs' treating physicians as a defense expert witness. The prevalent view in those jurisdictions that bar ex parte interviews is that plaintiffs' physicians cannot serve as experts for the defense. Focusing on the fiduciary nature of the physician-patient relationship, these courts have concluded that the physician's duty of loyalty to the patient prevents him from testifying for the patient's adversary. They conclude that to do so would cause a detriment to the quality of the relationship and would create a clear conflict of interest for the physician. These courts have also observed that becoming an expert for the adversary exploits the relationship because the physician's opinion may rest on information acquired solely from his position of trust as a fiduciary. See *Alston;*

*Piller; Miles; Serrano v. Levitsky,* 215 N.J. Super. 454, 521 A.2d 1377 (1986).

The opposite viewpoint is that plaintiffs' physicians should not be precluded from testifying as experts for the defense, especially when the physician rendered treatment related to the physical condition at issue, inasmuch as he would possess the most relevant medical information. See *Trujillo v. Puro,* 101 N.M. 408, 683 P.2d 963 (Ct.App. 1984); *Orr v. Sievert,* 162 Ga.App. 677, 292 S.E.2d 548 (1982).

In *Manion v. N.P.W. Medical Center of N.E. Pennsylvania Inc. et al.,* supra, plaintiff was injured in a fall and transported to defendant N.P.W. Medical Center. X-rays were taken by hospital personnel and were interpreted by defendant Dr. Weisbaum. Plaintiff was treated by defendant Dr. D'Anca for fractures of the left clavicle and scapula and thereafter released. Two weeks later, plaintiff was admitted into Mercy Hospital where he was treated by a Dr. Ambruso and a Dr. Kao. There it was determined that plaintiff had a fracture dislocation of his cervical spine. After filing suit, counsel for defendant D'Anca contacted Drs. Kao and Ambruso ex parte. They were subsequently listed as expert witnesses for the defense. Plaintiff's counsel filed a motion in limine seeking to preclude the defense both from making further alleged unauthorized ex parte contacts with plaintiff's treating physicians and from calling those physicians as expert witnesses for the defense at trial. The former treating physicians had refused to even speak to plaintiffs' counsel after engaging in ex parte discussions with defense counsel.

The district court held that the defense was precluded from future ex parte contacts with any of plaintiffs' former or current treating physicians unless advance reasonable notice was provided to

plaintiff or his counsel. The court observed that the prohibition against ex parte contacts was based on public policy, i.e., protecting the confidential nature of the physician-patient relationship and preserving the physician's fiduciary responsibilities during the litigation process. "Physicians owe a fiduciary duty to their patients not to disclose their patients' confidences in order to encourage all persons to speak with their physicians openly and accurately about their medical history, symptoms, etc." Slip op. at 23. The court further explained:

"When a plaintiff's treating physician is interviewed ex parte by defense counsel without prior notice to the plaintiff or his counsel, there are no safeguards against the revelation of matters irrelevant to the lawsuit and personally damaging the plaintiff/patient, and the potential for breaches in the confidentiality between a patient and his physician could have a chilling effect upon the patient-physician relationship.

"Furthermore, the unauthorized ex parte interview of a plaintiff's treating physician by defense counsel creates a situation which may invite questionable conduct. This court will not overlook the current concerns in the medical malpractice insurance industry and the attitudes of physicians and carriers alike. An unauthorized ex parte interview could disintegrate into a discussion of the impact of a jury's award upon a physician's professional reputation, the rising cost of malpractice insurance premiums, the notion that the treating physician might be the next person to be sued, and other topics which might influence the treating physician's views. The potential for impropriety grows even larger when defense counsel represents the treating physician's own insurance carrier and when the doctor, who typically is not represented by his per-

sonal counsel at the meeting, is unaware that he may become subject to suit by revealing the plaintiff/patient's confidences which are not pertinent to the pending litigation." Slip op. at 24-25.

The court further concluded that plaintiffs' counsel should have advance notice in order to be able to instruct the physician about the permissible scope of the interview and to ward off answers to inquiries on irrelevant matters. This procedure also allows counsel to seek a protective order when unusual circumstances exist. This approach reflects the concerns of those courts that disallow ex parte interviews because they are not contemplated by discovery rules. On the other hand, *Manion* only requires prior notice; the court expressly declined to decide whether plaintiffs' counsel has the right to be present when defense counsel meets informally with a treating physician. This approach would be in accord with those jurisdictions that recognize that the formality of depositions may not be mandated in every situation because ex parte interviews are not prohibited by discovery rules.[3]

*Manion* also held on the facts of that case that "the public policy favoring confidentiality between a physician and his patient compels this court to preclude defense counsel from calling [plaintiff's treating physicians] as expert witnesses at trial." However, the court expressly declined to decide whether a treating physician may ever serve as an expert witness on behalf of the defense. It concluded that under those circumstances plaintiff would be unfairly

3. *Manion* observed that several courts compelled plaintiffs to sign authorization forms allowing their physicians to meet with defense counsel, citing *Stempler; Doe; Green; Stuffebaum*. Therefore it noted that although ex parte interviews were permitted, plaintiffs had already received advance notice.

prejudiced if defense counsel were allowed to retain the treating physicians as experts.

As the court in *Manion* illustrated, a line of cases proscribing ex parte interviews has emanated from several Pennsylvania trial courts. The seminal case is *Alexander v. Knight,* 25 D.&C.2d 649 (1961), affirmed per curiam on the opinion of the trial judge, 197 Pa. Super. 79, 177 A.2d 142 (1962). In *Alexander,* a physician employed by the defense, a Dr. Ezickson, contacted one of plaintiff's treating physicians, a Dr. Murtagh, and obtained a report favorable to defendant. The court, in dicta, remarked:

"We do not consider the entire Ezickson matter as significant in this case, but we deem it advisable to briefly refer to our view of this incident. We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation. The doctor, of course, owes a duty to conscience to speak the truth; he need, however, speak only at the proper time. Dr. Ezichson's role in inducing Dr. Murtagh's breach of his confidential relationship to his own patient is to be and is condemned." 25 D.&C.2d at 655, 177 A.2d at 146.[4]

The first case to follow *Alexander* was *Shea v. McCadden,* 46 D.&C.2d 560 (1969). There defendants sought to have plaintiff examined by a psychi-

---

4. This passage was quoted with approval in *Piller; Anker;* and *Hammonds.*

atrist presently in their employ but who had previously been plaintiff's treating physician. In denying defendant's motion, the court stated:

"Our concern is defendants' employment of [the psychiatrist] to now examine plaintiff, with his prior accumulated knowledge gained at a time when plaintiff reposed the fullest trust in his ability, integrity, and confidence, and which trust, we note, is absolutely essential to the relationship of patient and doctor, if the doctor is to function at the most salutary level to apply his healing skills for the patient's benefit. With this, the physician's hand should have been stayed, out of duty to his professional posture.

. . .

"To allow this physician to conduct this examination would be to give legal sanction to a breach of the confidential relationship between patient and doctor." Id. at 562-63.

In *Nicholson v. Polcyn Estate,* 12 D.&C.3d 561 (1979), the court held that the patient had a cause of action against his physician for disclosing confidential information, citing cases in other jurisdictions, the dicta in *Alexander,* and *In re "B",* 482 Pa. 471, 394 A.2d 419 (1978). It stated "[A] physician has a legal duty to maintain confidentiality of information arising from the physician-patient relationship unless compelled to testify during litigation." Id. at 569.

In *Freyer v. The Travelers Indemnity Co.,* 15 D.&C.3d 649 (1980), defendant sought to have plaintiff examined by her former treating physician despite the fact that he was then employed by defendant. In denying motion, the court, as in *Shea* noted:

"Defendant . . . proposes to have plaintiff's treating physician now examine, reevaluate and report on plaintiff's condition. The physician would now be acting in the capacity of an expert witness for hire, and actively representing the interest of his employer, defendant-insurance carrier. Such action would have a "chilling" effect on all potential patients. A patient would realize that his treating physician could be called upon to "sell" to a defendant-insurance company either privileged or non-privileged information given by the patient (plaintiff) to the physician. Further, the physician would be in a position to utilize all information gained in his capacity as "treating physician" to orchestrate a defense on behalf of the defendant-insurance carrier. Counsel for defendant acknowledged that it must be assumed that all information previously communicated to the patient-plaintiff's physician would indeed be utilized by the physician in conducting his examination on behalf of defendant. The scope of the physician's knowledge concerning plaintiff's medical history, gained in his capacity as her treating physician, can far exceed that which is a proper matter for consideration for the injuries of which plaintiff has complained." Id. at 651-52 (citation omitted).

In *Hoffmeyer v. Pell*, 23 D.&C.3d 448 (1982), defendant in a medical malpractice action filed a motion for production seeking authorizations from plaintiff for the release of medical records. Plaintiff objected to a phrase on the authorization form which directed the physician "to discuss" the medical records with defense counsel. Plaintiff contended that the defense should obtain any discovery from the physician by deposition or interrogatories, thereby assuring that plaintiff's counsel would be present at the "discussion." The court agreed. Re-

ferring to the language in *Alexander* that a physician owes a duty to speak the truth but only at the proper time, the court stated that "the proper time would be in a more formal or official setting such as in trial, deposition, or interrogatories," Id. at 452. Citing, inter alia, *Hammonds; Garner; Wenninger; Weaver;* the court in *Hoffmeyer* held that discovery should be confined to that specified in the discovery rules. The court explained:

"Formal discovery on the record, after notice to and opportunity to other parties to be present and to participate in the proceedings, is by far the fairest and most satisfactory means of discovery as our rules clearly contemplate. Moreover, Judicial Code [section] 5936 which provides that: "The testimony of any physician licensed to practice medicine may be taken by oral interrogation in the manner prescribed by general rule for the taking of depositions," although not an exclusive mandate, seems clearly to express a policy of Pennsylvania law inconsistent with unilateral interviews as here proposed." Id. at 455.

In *McNally v. Easton Hospital*, 46 Northampton Rep. 202 (1985), plaintiffs filed a motion to prohibit defendants from conducting an ex parte interview with plaintiff's treating physician and from retaining the treating physician as an expert witness. The court decided that the treating physician, a Dr. Holsclaw, was equally available to both side as a fact witness at trial. The court noted, "This is not to say, however, that Dr. Holsclaw is accessible to defendants for an ex parte interview before trial, or freely retainable as an expert by defendants." Id. at 204. The court concluded:

"Based on the duty of 'total care,' including the affirmative duty to aid in litigation set forth in *Alexander,* plaintiffs should be able to prevent con-

tact between Dr. Holsclaw and counsel for defendants in the manner of an ex parte interview with the possibility of retaining him as an expert witness. Although Dr. Holsclaw would freely speak with Defendants or their counsel, we believe that plaintiffs, as representatives of the patients, and as the patient of Dr. Holsclaw, have the right to object when the possibility exists that this affirmative duty will be breached by contact with the defense. The affirmative duty to aid in litigation discussed in *Alexander*, like the physician-patient privilege, is designed to protect the patient. Therefore, the patient should be able to avail himself of its protection.

"Defendants are not precluded entirely from all types of contact with Dr. Holsclaw. As stated previously, they may elicit his testimony as a fact witness at trial. Moreover, they may take the deposition of Dr. Holsclaw under Rule 4001(c) of the Rules of Civil Procedure, which provides "[A]ny party may take the testimony of any person, including a party by deposition upon oral examination or written interrogatories. . . ." In these situations, Plaintiffs would be represented by their counsel. However, defendants' use of Dr. Holsclaw as an expert witness would prevent plaintiffs' presence at the interviews between Dr. Holsclaw and defendants' counsel. Under *Alexander v. Knight*, supra, we believe that this type of contact was intended to be discouraged." Id. at 205.

In *Feingold v. SEPTA*, 512 Pa. 567, 517 A.2d 1270 (1986), the trial court denied the defense leave to call plaintiff's treating physician as a trial witness because the physician's name was not listed in defendant's pretrial memorandum. Plaintiff argued on appeal that the exclusion of the physician's testimony was merited because "the privilege of communication between a doctor and his patient precludes

the admission of such testimony at trial." Id. at 574. The Supreme Court rejected this contention and found that the physician's testimony was improperly excluded. The court stated:

"Finally, with respect to the trial court's exclusion of Dr. Atkins' testimony, appellant contends that the privilege of communication between a doctor and his patient precluded the admission of such testimony at trial. There is absolutely no merit to this claim, especially where the appellant has brought an action in personal injury and certain medical claims are at issue. See 42 Pa. C.S. §5929." Id at 574.[5]

*Feingold* did not decide the broader issues presently before us.[6] It does however make crystal clear that in Pennsylvania the statutory protection afforded to the patient-physician relationship is severely circumscribed. See *Commonwealth ex rel. Platt v. Platt*, 266 Pa. Super. 276, 404 A.2d 410 (1979).[7]

---

5. Section 5929 sets forth the physician-patient privilege:
"No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries."
Act of July 9, 1976, P.L. 586, as amended, 42 Pa. C.S. §5929.

6 The court made no analysis with respect to the dicta in *Alexander v. Knight*, supra.

7. In *In re "B"*, 482 Pa. 471, 394 A.2d 419 (1978), a plurality of the Supreme Court held that the limited physician-patient privilege at 42 Pa. C.S. §5929, formerly the Act of June 7, 1907, P.L. 462, §1, 28 P.S. §328, did not bar the testimony of a psychiatrist during the dispositional phase of a juvenile court proceeding. Two justices would have held that a patient has a constitutional right to prevent the disclosure of information arising from treatment by a psychotherapist.

In the unpublished case of *Rost v. Kraus,* Civil no. 83-00144, Slip. op. (Lycoming Mar. 20, 1985), defendant physician's attorney contacted two of plaintiff's prior treating physicians ex parte and notified plaintiff of their intent to call those physicians as defense expert witnesses. In denying plaintiff's motion to preclude the testimony of the doctors at trial the court, noting that section 5929 of the Judicial Code did not provide relief, concluded:

"[T]he plaintiff contends that a physician owes to his patient an additional and distinct duty not to assist counsel opposing the patient in litigation, by, for example, giving a unilateral interview to opposing counsel. We disagree. . . . To the extent that the *dicta* in *Alexander v. Knight* is contrary to our conclusion, we respectfully disagree that such a view of the physician's duty would preclude the admission of testimony sought by the defendants in the case. To rule otherwise would severely limit the defendants, as well as the trier of fact, from exploring facts necessary to the appropriate resolution of this case." Slip op. at 5.

In analyzing the issues on the limited record currently before us, it is important to note that Dr. Woldorf is not a party nor has evidence been presented that a legal, ethical or fiduciary relationship exists between him and plaintiff which would prevent him from releasing information involving plaintiff ex parte, when plaintiff has instituted this civil suit. Dr. Woldorf is willing to testify as a defense expert in this suit brought against another physician by his former patient. Quite obviously he is not concerned about any potential civil liabilty. Once a civil suit is initiated there is no protectable privilege or confidentiality whatsoever pursuant to section 5929. See *In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143 (1980). We

need not address here the parameters of permissible conduct prior to the filing of a civil suit.

As to the argument that public policy prohibits this conduct we may look at recent acts of the legislature. See *Witmer v. Exxon Corp.*, 260 Pa. Super. 537, 394 A.2d 1276 (1978). Section 5929 of the Judicial Code was enacted in 1978 and was substantially a reenactment of the Act of June 7, 1907, P.L. 462, §1. Furthermore, by examining the law regarding the protected confidential communications between attorney and client, it is quite evident that the Legislature knows exactly how to provide for a broad privilege when it so desires.[8] See *Estate of Kofsky*, 487 Pa. 473, 409 A.2d 1358 (1979). Similarly, the legislature has specially sought to protect the relationship between a psychologist and patient.[9]

The District Court in *Manion* relied in great part on numerous general statements of the Pennsylvania trial courts for which we find no legal precedent or Pennsylvania public policy to support. The courts in *Alexander v. Knight*, supra, and in *Shea v. McCadden*, supra, envisioned a concept of confidentiality and a fiduciary relationship between physi-

---

8. 42 Pa. C.S. §5928 provides:

"*Confidential communications to attorneys* — In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."

9. 42 Pa. C.S. §5944 provides:

"No person who has been licensed . . . to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client."

cian and patient which is not found in any statute. This does not alter the fact that a physician may consider it his ethical duty to refuse to provide ex parte information. In that event the remedy for the party seeking factual testimony is to take a deposition of the physician pursuant to the Judicial Code at section 5936, which provides:

"(a) General rule.— The testimony of any physician licensed to practice medicine may be taken by oral interrogation in the manner prescribed by general rule for the taking of depositions.

"(b) Admissibility.—A deposition taken under subsection (a) shall be admissible in a civil matter."

Furthermore, the physician can always be subpoenaed as a fact witness although he can never be forced to give an expert opinion against his will. See *Pennsylvania Co. For Insurance on Lives and Granting Annuities, Trustee v. Philadelphia,* 262 Pa. 439 (1918); *Yerko v. Clearfield Bituminous Coal Corp.,* 145 Pa. Super 269, 21 A.2d 97 (1941); *Evans v. Otis Elevator Co.,* 403 Pa. 13, 168 A.2d 573 (1961). See also, *Golden v. SEPTA,* 57 D.&C.2d 738 (1972); *Pineda v. Bridgehouse,* 69 Lanc. L.R. 147 (1984), affirmed, 345 Pa.Super. 630, ___ A.2d ___ (1985).

We do not believe it is proper for a court to engraft upon a physician-patient relationship a duty after a civil suit is filed which is not set forth in Pennsylvania law. We agree with those courts holding that absent a statute or clear statement of public policy by the legislature to the contrary, physicians are to be treated like any other witness. And as set forth in *Rost v. Kraus,* supra, the "[c]ase law . . . does not establish such a separate physician-patient duty or privilege." We envision that in most cases physicians will choose not to participate in ex parte contacts nor will they agree to be an expert witness for

the defense against a former patient based upon their own understanding of their ethical obligations to their patient. However, in many instances these physicians will possess relevant information regarding the case. If restrictions are to be placed on those physicians who are willing to do either, they should be set by the legislature and not the courts.

In that unique situation such as *Manion* where the prior treating physicians would not even discuss the case with plaintiff's attorney, plaintiff's attorney is allowed to conduct depositions and can always call the physician as a fact witness. The remedy provided in *Manion* was not necessary or supported by Pennsylvania law. Ultimately, the credibility of any witness, a physician included, is to be determined by the trier of fact. The knowledge these physicians may have, or the interest they may have in the outcome of the case, or any animosity they may have toward their former patients may all be considered in the credibility to be attributed to their testimony.

Accordingly, for the foregoing reasons, the following order is entered.

## ORDER OF COURT

And now, this March 9, 1988, plaintiffs' motion for a protective order is denied.